947 F.2d 945
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Armina LEE, d/b/a Brass Bull, Plaintiff-Appellant,
v.
The CITY OF NEWPORT, et al., Defendants-Appellees.
 No. 91-5158.
 United States Court of Appeals, Sixth Circuit.
 Nov. 5, 1991.
 
 1
 Before MILBURN and SUHRHEINRICH, Circuit Judges, and JORDAN, District Judge.*
 
 
 2
 LEON JORDAN, District Judge.
 
 
 3
 This is an appeal from the judgment of the United States District Court for the Eastern District of Kentucky. The determinative issue in this civil rights action pursuant to 42 U.S.C. § 1983 is the constitutionality of certain provisions of an ordinance enacted by the City of Newport, Kentucky, Ordinance No. 26-39. This ordinance purports to be an occupational licensing provision under which the plaintiff's license to operate an entertainment establishment known as the Brass Bull in Newport was suspended and conditionally revoked. The plaintiff sought injunctive relief in the District Court for the Eastern District of Kentucky, which denied the application for injunctive relief following a hearing. The plaintiff has appealed and for the reasons stated below this Court reverses the judgment of the District Court.
 
 I. FACTS
 
 4
 A hearing on the plaintiff's application for injunctive relief was held in the Eastern District of Kentucky on January 31, 1991. Most of the facts surrounding the suspension of the plaintiff's occupational license are not disputed.[1] The ordinance at issue, section 26-39, provides in relevant part:
 
 
 5
 "(a) Any license issued under this division may, with notice to the holder thereof and a hearing as hereinafter provided for, be revoked or suspended by the Board of Commissioners.
 
 
 6
 (1) If, within twelve months prior to the date on which charges are filed, there has been a conviction of any licensee or his agent, servants or employees, for any action or activity occurring in, on, or at the premises covered by the license, in violation of any provision of this division or any other division of the City of Newport, or of any criminal or penal statute of the Commonwealth of Kentucky against gambling, disorderly conduct, or any other criminal or penal offense, and a judgment of conviction in any court of competent jurisdiction shall be conclusive evidence of such violation....
 
 
 7
 "(b) ... Upon a decision by the Board of Commissioners to revoke or suspend a license issued under this division, all business activity at that location shall cease immediately for the period of suspension or revocation." (Emphasis added.)[2]
 
 
 8
 The plaintiff is the owner and operator of the Brass Bull, an adult oriented nightclub. She has operated the nightclub since September, 1984, and has been issued an occupational license for every year of operation; the last such license was issued in July, 1990. Ms. Lee testified that at the time of the last license renewal, she was aware that two of her employees had been convicted of acts of prostitution, one of whom was convicted twice, that occurred on the premises of the Brass Bull. Prior to the renewal of her license, one of these employees had been terminated by the plaintiff and the other had left her job voluntarily. As of July 1, 1990, the plaintiff was not offering nude dancing at her club, since she had her liquor license at that time, but was offering seminude dancing. J.A. 57-59.
 
 
 9
 On October 25, 1990, the City of Newport (the City) issued the plaintiff a notice to revoke her license. This notice was received by her in early November. Prior to the issuance of the notice, the plaintiff decided to offer nude dancing as entertainment and thus surrendered her liquor license to the City and the State of Kentucky. J.A. 16, 59-61.
 
 
 10
 The City's notice of revocation was based on the three convictions of two employees for prostitution in May, 1990. The plaintiff's uncontradicted testimony was that she was not aware of prostitution or solicitation occurring on the premises of the Brass Bull prior to these convictions. She has all her employees sign a contract in which they are notified that prostitution will not be permitted on the premises. She stated that she neither condones nor encourages such conduct and that any employee who is found engaging in this conduct is fired immediately. She holds weekly meetings with her employees as part of her efforts to oversee their activities. She assigns other employees to supervise the employees and has instructed them as to how such conduct is to be handled. These precautions had been used by her since at least April, 1990. The plaintiff stated in her testimony at the hearing on her application for injunctive relief that by offering nude dancing she was better able to prevent prostitution since she removed the booths from the club, turned up the lighting, eliminated the sale of alcohol, and prohibited all contact between the dancers and customers. J.A. 61-62, 68.
 
 
 11
 In a letter from the City's law department, dated November 30, 1991, the City offered to settle the revocation proceeding if the plaintiff would cease offering nude dancing and reactivate her liquor license. Another settlement offer had been made on November 19, 1990. The plaintiff declined the settlement offers. J.A. 23-24, 63-64.
 
 
 12
 On January 21, 1991, a revocation hearing was held before the City commissioners. The plaintiff was present and testified. She explained the efforts she made to control her employees and offered other evidence of the precautions she had taken to prevent prostitution on the premises. This evidence was uncontroverted by the City. J.A. 64-67.
 
 
 13
 At the hearing in the District Court ten days later, the plaintiff stated on cross-examination that she was working in the club the night on which two of her employees were cited for prostitution. She testified, however, that she saw no indication that these employees were engaged in illegal conduct. These two employees were not arrested by the undercover officer on the same night as their violations and the plaintiff stated that she had no knowledge of the violations until the latter part of April, 1990. J.A. 77-78.
 
 
 14
 James Parsons testified on behalf of the City. Mr. Parsons is the city manager and has held this position since October 1, 1989. His responsibilities include filing charges against occupational licensees whose licenses may be subject to revocation or suspension. He filed the charges against the plaintiff. While the City has established regulations governing the conduct of businesses engaged in selling alcohol, every business in the City is required to obtain and maintain an occupational license. J.A. 80-82, 114.
 
 
 15
 The charges against the plaintiff were based on these three prostitution convictions obtained in May, 1990. The charges were lodged on October 25, 1990, against the plaintiff. He stated that the City was aware at the time that these charges were brought that the Brass Bull was offering nude dancing but stated that this fact had no effect on the City's decision. Mr. Parsons was present at the hearing held by the City in January, 1991, on the revocation of the plaintiff's license. As a result of this hearing, the plaintiff's license was suspended for six months and she was placed on probation, during which period of probation another violation would have resulted in the revocation of her occupational license. J.A. 82-85.
 
 
 16
 Unsupported by the record of the hearing before the City commissioners, Mr. Parsons offered his opinion that the City imposed suspension rather than revocation because the plaintiff attempted to exercise more control over the activities of her employees in her business than did another licensee whose charges had been heard by the City commissioners on the same day. Mr. Parsons testified that prostitution affects the viability of downtown businesses because customers tend to avoid the downtown shopping district due to these kinds of illegal activities. He further stated that since many acts of prostitution are performed by the employees of establishments like the plaintiff's, the City was attempting to make these establishments assume responsibility for the conduct of their employees to prevent prostitution from occurring. J.A. 86-87.
 
 
 17
 At the January hearings, the City offered no evidence that the plaintiff had not in fact taken steps to control the behavior of the Brass Bull's employees. No notice was given to the plaintiff that the City was concerned about the degree or extent of control she exercised over her employees. No criminal charge was brought against the plaintiff for permitting prostitution to occur on the premises of the Brass Bull.[3] J.A. 93-94.
 
 
 18
 He denied that the City was motivated by a desire to eliminate nude dancing in Newport in taking its actions against the plaintiff. The City is investigating occupational license violations in other businesses and not all nude dancing establishments have been charged with license violations. No charges have, however, been processed against or are pending against any other kind of business than adult oriented establishments. Nothing in the occupational license ordinance expressly permits the decision maker to consider any mitigating factors in the determination of whether to revoke or suspend a license and no standard governs the decision maker's discretion as to the nature of the penalty for a violation. J.A. 96-98, 103-106.
 
 
 19
 Mr. Parsons admitted that he and the City commissioners have publicly expressed their opposition to adult entertainment establishments. These same commissioners had the authority to make the revocation decision concerning the plaintiff's club. He testified that studies have been conducted that indicate a correlation between prostitution, both in the clubs and in the neighborhood of the clubs, and the operation of adult oriented establishments. J.A. 111-113.
 
 
 20
 In the written decision of the Board of Commissioners, the City found that three charges of prostitution had been alleged to have occurred on the premises on the same evening and had subsequently been reduced to convictions. Based on these convictions, the Commissioners then found the plaintiff guilty of a violation of section 26-39(a)(1) and thus temporarily suspended and conditionally revoked her occupational license. J.A. 27-28.
 
 
 21
 Following the hearing on the plaintiff's application for injunctive relief, the District Court entered its findings of fact and conclusion of law. The District Court recognized that at the hearing before the Commissioners the uncontradicted testimony of the plaintiff was that she had taken "precautions ... to prevent prostitution, and denied any awareness that prostitution had taken place." The plaintiff did not deny that acts of prostitution did occur on the premises of the club. J.A. 29, 34, 38.
 
 
 22
 As to the plaintiff's claim that the ordinance at issue violated her due process rights under the Fourteenth Amendment because it did not require that she have knowledge of the conduct of her employees and imposed strict liability for such conduct, the District Court rejected this contention based on its conclusion that the police powers permitted the City to define the violation so long as the ordinance has a rational basis between its requirements or penalties and a legitimate governmental purpose, inferring that since the plaintiff worked on the premises six days a week, she should be presumed to be aware or should be aware of any acts of prostitution that occurred in the club. The Court addressed the other issues raised by the plaintiff and concluded that no injunction should issue. J.A. 38-39, 45.
 
 II. ANALYSIS
 
 23
 While the plaintiff has raised a number of issues, the Court has concluded that the issue concerning her lack of knowledge of the acts of prostitution that occurred on the premises is determinative. The effect of the ordinance is either to create a presumption of knowledge or to eliminate any requirement of knowledge on the part of the licensee or operator of illegal activities or prohibited conduct on the premises based simply on the fact of a conviction of a licensee's employee. The District Court was persuaded that "it is not an irrational presumption that if prostitution were occurring she did know or should have known." J.A. 39. Since the plaintiff's uncontradicted evidence was diametrically contrary to this finding by the District Court, the District Court effectively applied an irrebuttable presumption but one that "presumed a fact which was not necessarily or universally true." Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 2468 (1975).
 
 
 24
 In assessing the constitutionality of a presumption, its operation on a protectable right, such as the property interest at stake in the present case, to preclude a licensee from putting on evidence in defense or from having that evidence meaningfully considered can result in a violation of the guarantee of due process embodied in the Fourteenth Amendment.
 
 
 25
 " '[W]hat procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' "
 
 
 26
 Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 1212 (1972) (citations omitted). One of the fundamental purposes of the due process clauses of the Constitution " 'is to allow the aggrieved party the opportunity to present his case and have its merits fairly judged.' " Okeson v. Tolley School District No. 25, 760 F.2d 864, 868 (8th Cir.), on reh 766 F.2d 378 (8th Cir.1985) (citation omitted).
 
 
 27
 The City has exercised its police powers to require occupational licenses for all businesses conducted within its jurisdiction. In particular, it oversees adult oriented establishments based on studies showing a correlation between the operation of such establishments and certain criminal activities. The City is attempting to induce the operators of these establishments to take responsibility for the conduct of employees who engage in illegal or prohibited activities by threatening suspension or revocation of their occupational licenses. The City hopes that the reduction of the level of such activities would help reinvigorate the downtown shopping district. The Court does not intend to question the validity of this public policy or of the City's interest in preserving the viability of its downtown business district. The question in this case is whether the means adopted by the City to attempt to achieve these goals are constitutional. More specifically stated, the question is whether the application of a conclusive or irrebuttable presumption or the elimination of any knowledge requirements is consistent with meaningful due process in this case?
 
 
 28
 The right to pursue an occupation is a protected property right that is subject to reasonable regulation. Wilkerson v. Johnson, 699 F.2d 325, 328 (6th Cir.1983). Moreover, once a license or permit to engage in some activity regulated by the State is issued by a State, it is a property right that cannot be denied without adequate due process. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586 (1971). Furthermore, in the present case, the plaintiff engages in a business that involves the exercise of First Amendment rights.
 
 
 29
 Revocation precludes the licensee from operating the business and thus even a temporary suspension or revocation will have substantial consequences for a licensee. "License revocations are so serious as to be treated ' "in the nature of criminal proceedings." ' ... Procedural requirements are therefore rigorous for a license revocation proceeding." Richards v. Emanuel County Hospital Authority, 603 F.Supp. 81, 85 (S.D.Ga.1984) (citing American Optometric Association, Inc., 379 F.Supp. 175 (N.D.Ga.), aff'd 491 U.S. 888 (1974)). A licensee is thus entitled to have the opportunity to be heard both at a meaningful time and in a meaningful manner. Barry v. Barchi, 443 U.S. 55, 99 S.Ct. 2642, 2650 (1979). As the Supreme Court observed in Stanley,
 
 
 30
 "[p]rocedure by presumption is always cheaper and easier than individualized determination. But, when ... the procedure forecloses the determinative issues ..., when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of"
 
 
 31
 a licensee in the conduct of her business and the exercise of First Amendment rights. 92 S.Ct. at 1215.
 
 
 32
 The presumption applied by the District Court is entirely distinguishable from that permitted by the Supreme Court in Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 96 S.Ct. 2882 (1976), in which the Supreme Court upheld the presumption that persons with certain findings regarding pneumoconiosis would be entitled to disability compensation. Since the statute at issue in Turner Elkhorn Mining Co. was purely an economic regulation that did not touch on or affect fundamental rights, the Court found no difficulty in accepting a legislative determination (presumption) that evidence of disability in certain instances would require payment of total disability compensation. Id., at 2896. Cf. Weinberger v. Salfi, 95 S.Ct. at 2469-2470. What is noteworthy about the presumption in Turner Elkhorn is that it does not prevent any person from conducting a business or engaging in an occupation, particularly one implicating the exercise of First Amendment rights, and rather is part of remedial social legislation. See also Burlington Northern Railroad Co. v. Department of Public Service Regulation, 763 F.2d 1106, 1113 (9th Cir.1985).
 
 
 33
 In Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230 (1973), the Supreme Court of the United States observed that
 
 
 34
 "[t]he State's interest in administrative ease and certainty cannot, in and of itself, save [a] conclusive presumption from invalidity under the Due Process Clause where there are otherwise reasonable and practicable means of establishing the pertinent facts on which the State's objective is premised. ... Rather, standards of due process require that the State allow such an individual the opportunity to present evidence...."
 
 
 35
 93 S.Ct. at 2236. Due process afforded to a person prior to deprivation of a license must be meaningful and appropriate to the case:
 
 
 36
 "It is a proposition which hardly seems to need explication that a hearing which excludes consideration of an element essential to the decision whether licenses of the nature here involved shall be suspended does not meet this standard."
 
 
 37
 Bell v. Burson, 91 S.Ct. at 1591.
 
 
 38
 Another case involving the application of a presumption, Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532 (1969), also rejecting administrative convenience as a basis for the existence of a presumption, emphasized that a presumptive inference of guilty knowledge based solely on presence at a place in which illegal activity occurs is generally arbitrary or irrational. Id., at 1548-1549. Unless "it can be said with substantial assurance that one in possession of [an adult oriented nightclub] is more likely than not to know that" prostitution was occurring on the premises of the nightclub, a presumption of knowledge cannot be conclusively applied to justify the revocation or suspension of a license to operate such a business. Id., at 1553.
 
 
 39
 In addition, although the District Court presumed that the plaintiff knew that prostitution was occurring on the premises of the Brass Bull, the wording of the ordinance would not require the application of a presumption of knowledge to obtain a revocation. All that is necessary to warrant revocation under this ordinance as written is for any employee, servant, or agent of the licensee to have been convicted even once of violating any ordinance of the City or any criminal law of the State of Kentucky. Consequently, if a bookkeeper for the plaintiff was convicted of embezzlement from the plaintiff, the plaintiff's occupational license could be revoked, despite the fact that the plaintiff would be highly unlikely to know that her bookkeeper was engaged in this kind of criminal activity, since if she were aware of it she would probably take some action to stop it. The ordinance is thus a strict liability provision and the District Court's finding of presumed knowledge was both unnecessary under the ordinance as drafted to obtain a revocation and created an essentially irrebuttable presumption that was contrary to the uncontested evidence that the plaintiff did not know that her employees were engaged in prostitution and that she took reasonable steps to attempt to prevent such conduct on her premises. Nothing that the plaintiff could have shown at her hearing before the City commissioners or in the District Court would have prevented the ordinance from being applied as written. Cf. Universal Restoration, Inc. v. United States, 798 F.2d 1400, 1406 (Fed.Cir.1986).
 
 
 40
 This ordinance is entirely unlike the statute upheld in Hvamstad v. Suhler, 915 F.2d 1218 (8th Cir.1990), in which a pattern of convictions was required to permit the abatement of a nuisance by city officials. Obviously, a pattern of convictions of which the operator is given or has notice provides knowledge that such conduct is occurring on the premises. As the Court of Appeals in Hvamstad noted, "the abatement statute ... is designed to encourage property owners to abate the basis for the nuisance themselves by delivering notice of the convictions to the owners." Id., at 1220. Further, the statute in Hvamstad was limited to certain enumerated offenses related to the operation of the business and did not allow abatement proceedings to be premised on all types of convictions, whether or not reasonably related to the nature of the business being conducted. Not all prohibitable conduct is necessarily related to a State's legitimate interest in regulating or licensing a particular occupation.
 
 
 41
 A licensing regulation must contain requirements that are "rationally related to an applicant's fitness for the occupation." Chalfy v. Turoff, 804 F.2d 20, 23 (2d Cir.1986). See also Vruno v. Schwarzwalder, 600 F.2d 124, 129-130 (6th Cir.1979). The ordinance is not limited to offenses (prostitution, solicitation, service of minors, etc.) occurring on the premises that would be reasonably related to preventing or curing the purported social evils or secondary effects at which the City is claiming to aim and rather extends to any conduct that would be a violation of a City ordinance or a State criminal law, such as embezzlement, regardless of whether such a violation would have any relation to the kinds of problems that the City claims it was attempting to prevent or to cure. The ordinance goes beyond the purposes of preventing or curing the secondary effects supposedly flowing from the operation of establishments like the Brass Bull and reaches conduct that, while may otherwise be prohibited by the State or its political subdivisions, would not result in or contribute to the secondary effects in the downtown area in which these establishments are located but would nevertheless permit the revocation of the plaintiff's license without achieving or furthering the City's purported goal of eliminating these secondary effects.[4] This is clearly arbitrary or irrational.
 
 
 42
 The ordinance permits the revocation of occupational licenses without any showing that the operator had any control over the conduct of employees or that the operator willfully ignored prohibited activities or otherwise knew of, should have known of, or condoned illegal conduct on the part of the operator's employees, agents, or servants. Cf. Finer Foods Sales Co., Inc. v. Block, 708 F.2d 774, 777-778 (D.C.App.1983). As recognized in Chulchian v. City of Indianapolis, 633 F.2d 27, 32 (7th Cir.1980), "because of the knowledge requirement, the ordinance does not penalize a licensee for an isolated incident over which he has no control." In contrast, in Genusa v. City of Peoria, 619 F.2d 1203 (7th Cir.1980), the same Circuit Court of Appeals as decided Chulchian observed that an ordinance permitting revocation if the licensee allowed "anything to occur on licensed premises that is in any manner unlawful," id., at 1221, would be constitutional only "[o]n the assumption that [the City] does not mean by this provision to enlarge the licensee's vicarious criminal liability beyond traditional bounds...." Id.
 
 
 43
 Courts faced with similar provisions in State law have readily recognized that equal protection or due process guarantees are implicated when use of convictions unrelated to the government's legitimate purposes deprive a person of the right to engage in an occupation, often relying on Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752 (1957), which held that any qualification or requirement for an occupation must bear a rational relation to the person's fitness to engage in the particular occupation or business, 77 S.Ct. at 756. All such requirements must be tailored to promote the government's interest in regulation of the occupation, based on the nature of the crimes or offenses for which convictions may have been obtained and their relation to the fitness of the licensee to engage in that particular occupation. See, e.g., Gregg v. Lawson, 732 F.Supp. 849, 854-856 (E.D.Tenn.1989); Schanuel v. Anderson, 546 F.Supp. 519, 523-524 (S.D.Ill.1982), aff'd 708 F.2d 316 (7th Cir.1983). Without both a sufficient showing by the City that the plaintiff's fitness to operate the Brass Bull was affected by the conviction of any of her employees for acts of prostitution or other relevant criminal conduct committed on the premises, such as that she knew or should have known about or condoned such conduct, and without allowing the plaintiff the opportunity to present evidence in defense, fairly considered by the decision maker, the City may not revoke or suspend the plaintiff's occupational license in violation of her right to due process under the Fourteenth Amendment.
 
 
 44
 Consequently, the provisions of the ordinance now under review cannot pass constitutional scrutiny under the rational relation test and thus violate the due process clause of the Fourteenth Amendment. These provisions permit the City to deprive an operator of a protected property interest without any relation to the evils at which the ordinance is allegedly aimed and, having no requirement that the operator know or should know from the circumstances that violations of City ordinances or State statutes are occurring on the licensed premises, the ordinance precludes the licensee from showing that the licensee had no knowledge of any such violations. The ordinance thus constitutes an improper imposition of strict liability or creates an irrebuttable presumption and is overbroad.
 
 III. CONCLUSION
 
 45
 Accordingly, the Court is of the opinion that section 26-39(a)(1) of the ordinances of the City of Newport is unconstitutional as presently written. The order of the District Court for the Eastern District of Kentucky is REVERSED and this case is REMANDED for action consistent with the opinion of this Court.
 
 
 
 *
 The Honorable Leon Jordan, U.S. District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 All references to the record will be to the Joint Appendix of the parties, with the notation "J.A." and the relevant page or pages in the Joint Appendix
 
 
 [2]
 Compare the provisions of the ordinance declared unconstitutional in Bayside Enterprises, Inc. v. Carson, 470 F.Supp. 1140, 1142-1146 (M.D.Fla.1979)
 
 
 [3]
 Nothing in the record indicates that a history of prostitution existed at the plaintiff's club and, rather, the record supports the conclusion that these were the first citations for such activities at the Brass Bull
 
 
 [4]
 While the Court does not address the issue of whether the ordinance in the present context violates the First Amendment, the Court notes that the Supreme Court recently held that nude dancing is not unprotected expression, Barnes v. Glen Theater, Inc., 111 S.Ct. 2456, 2463 (1991), and this Court has rejected permitting occupational licenses to be revoked when it would violate the First Amendment, City of Paducah v. Investment Entertainment, Inc., 791 F.2d 463, 469-470 (6th Cir.1986)