BRIGHT LIGHTS, INC. d/b/a Mousetrap Lounge; Ruth Everett, Individually and d/b/a Centerfold; Sheryl Lynn Villardo, Individually and d/b/a Cocktails & Dreams; and Mousetrap Burlesque and Artistic Dance Preservation Society, Inc.

v.

CITY OF NEWPORT and James E. Parson, City Manager.

Civ. A. No. 91–112.

United States District Court, E.D. Kentucky, at Covington.

Aug. 18, 1993.

Harry P. Hellings, Jr., Covington, KY, for plaintiffs.

Harry D. Rankin, Greenebaum Doll & McDonald, Covington, KY, for defendants.

## OPINION AND ORDER

BERTELSMAN, Chief Judge:

This matter is before the court on the parties' cross motions for summary judgment. (Docs. # 29 and # 31). Plaintiffs herein contest the constitutionality of several of Newport's regulations on adult entertainment establishments. Oral argument was heard on June 25, 1993.

## FACTUAL BACKGROUND

The facts are not contested. Plaintiffs are owners and operators of four establishments in Newport, Kentucky, which present erotic dancing: Bright Lights, d/b/a the Mousetrap Lounge, The Centerfold, Cocktails and Dreams, and Mousetrap Burlesque and Artistic Dance Preservation Society, Inc. ("Preservation Society"). The Mousetrap Lounge serves no alcohol and presents nude dancing to patrons, while Centerfold and Mousetrap Burlesque do serve alcohol and present semi-nude dancing. (Compl. ¶ 3–6.) The Mousetrap Burlesque operates out of the same address as the Mousetrap Lounge, but purports to be a nonprofit corporation operating as a private club and promoting, in its own words, nude dancing as an art form.

Defendant City of Newport ("City" or "Newport") long ago gained a reputation as home to a veritable smorgasbord of vice, attracting patrons from across the nation.

For decades, the small city was considered the Midwest's answer to Las Vegas, and leaders of organized crime were said to operate its gambling casinos and nightclubs.

In the 1960's, public pressure began to demand that Newport be cleaned up. This pressure has continued until the present, with varying degrees of success.

In 1982, Newport enacted Ordinance Number 0–82–85, requiring all erotic dancers working where alcohol was served to wear, at a minimum, "pasties" and a G-string. Nevertheless, the "strip" in Newport continued to operate with such establishments as the Body Shoppe, La Madame's, and the Brass Ass, sporting such neon promises as "The Most Beautiful Women in the World" and "Real Class A Ladies."

A 1986 report generated by the Newport Alcoholic Beverage Control Administrator indicated that of 28 adult bars opened since 1978 (including successive bars at the same site), 21 had had at least one prostitution-related conviction, and 18 had had multiple convictions. Def. Ex. K, p. 2. The report explained that "[a]ll of the prostitution in businesses with adult entertainment involved an alcoholic beverage as the median [sic] of exchange and the solicitation of such drinks by 'mixers.'" *Id.* In all, 98% of prostitution arrests in Newport occurred in the vicinity of these bars. *Id.* Adult entertainment establishments, which constituted 12% of all businesses serving alcohol, accounted for 17% of all police runs. Def. Ex. K, p. 21.

A later review, conducted in 1990 by the Newport License Inspector, documented the continued prostitution arrests occurring at several adult dancing establishments. Def. Ex. G. Moreover, the City determined that over $70,000 was expended in 1990 to target, patrol and prosecute the illicit behavior occurring in and around the bars. Def. Ex. H.

Several of Newport's citizens, merchants and church groups also opposed the presence of the semi-nude dancing clubs. These groups generally believed that the adult entertainment clubs were "clouds over [the] neighborhood that keep [it] from growing in the [right] direction." *See* Def. Ex. I (letter to Mayor from Taylors Landing Business

District). Complaints commonly expressed were that the seamy establishments deterred other merchants from locating in Newport's business district, deterred shoppers, served a poor example for the City's youth, and generally tarnished the City's image. *Id.*

Taking their cue from these studies and public sentiment, the City's Board of Commissioners imposed even stricter regulations on the remaining establishments. Thus, between December 1990 and June 1991, Newport passed several ordinances strictly regulating adult entertainment.

Plaintiffs have filed this action contesting the constitutionality of many of these ordinances. This court has jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983.

### ANALYSIS

Having heard oral argument on June 25, 1993, the court notes at the outset that plaintiffs have conceded the validity of Newport's "Clear View Ordinance" (Ordinance 0–91–25), and the "B–Girl Ordinance" (Ordinance 0–91–17), and thus withdrawn any objections to them. Remaining are plaintiffs' objections to Newport's "Bikini Ordinance" (No. 0–91–21), "Adult Entertainment Ordinance" (No. 0–91–14) and "Nude in Public Ordinance" (0–91–40).

At oral argument, plaintiffs additionally abandoned their arguments that the ordinances are preempted by state law providing for the establishment of nudist societies, or are invalid zoning ordinances.

(A) The Bikini Ordinance

Perhaps the most controversial provision of Newport's scheme to regulate adult entertainment is the "Bikini Ordinance" (Ordinance 0–91–25). The ordinance tracks the public nudity ordinance and the two should be considered together.

The relevant provisions are:

The Bikini Ordinance:

"Sec. 4–81. Persons prohibited from performing nude or nearly nude activities.

"It shall be unlawful for, and a person is guilty of, performing nude or nearly nude activity when that person appears on a business establishment's premises in such a manner or attire as to expose to view any portion of the pubic area, anus, vulva or genitals, or any simulation thereof, or when any female appears on a business establishment's premises in such manner or attire as to expose to view the portion of the breast below a horizontal line across the top of the areola at its highest point or simulation thereof. This definition shall include the entire lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breast, exhibited by a dress, blouse, shirt, leotard, bathing suit, or other wearing apparel provided the areola is not exposed in whole or in part.

"Sec. 4–82. Licensees prohibited from permitting nude or nearly nude activities.

"A licensee or retail licensee is guilty of performing nude or nearly nude activity when, having control of the business establishment's premises, which it knows or has reasonable cause to know is being used by any person to appear on the premises in such manner or attire as to expose to view portions of the pubic area, anus, vulva or genitals, or any simulation thereof, or used by any female to appear on the premises in such manner or attire as to expose to view any portion of the breast breast [sic] below a horizontal line across the top of the areola at its highest point or simulation thereof. This definition shall include the entire lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breast exhibited by a dress, blouse, shirt, leotard, bathing suit, or other wearing apparel provided the areola is not exposed in whole or in part. It permits such activity or fails to make reasonable and timely effort to halt or abate such activity or fails to make reasonable and timely effort to halt or abate such activity or use."

Public Nudity Ordinance:

"Section 17.44

"A. It shall be unlawful for a person to appear in any public place in such a manner or attire as to expose to view any portion of the pubic area, anus, vulva or

genitals, or any simulation thereof, or for any female to appear in such manner or attire as to expose to view the portion of the breast below a horizontal line across the top of the areola at its highest point or simulation thereof. This definition shall include the entire lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breast exhibited by a dress, blouse, shirt, leotard, bathing suit, or other wearing apparel provided the areola is not exposed in whole or in part.

"B. That any person who shall violate this Ordinance shall be guilty of a Class B Misdemeanor and shall be subject to fine and/or imprisonment as provided in the Kentucky Revised Statutes for a Class B Misdemeanor.

"C. 'Public place' as used here shall be defined the same as 'Public Place' in KRS 525.010."

K.R.S. 525.010(3), in turn, defines a "public place" as:

"[A] place to which the public or a substantial group of persons has access and includes but is not limited to highways, apartment houses and hotels not constituting rooms or apartments designed for actual residence. An act is deemed to occur in a public place if it produces its offensive or proscribed consequences in a public place."

The definitions of nudity in these ordinances seem to be based on the statute upheld by the Supreme Court of the United States in *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981).

*Bellanca* was a chapter in the long saga of the conflict between purveyors of nude and nearly nude live dancing and the local governments who undertook to regulate such dancing. The Supreme Court held in *Bellanca* that the Twenty-first Amendment (ending prohibition but giving local government broad powers to regulate the sale of intoxicating beverages) empowered local governments to prohibit nude and nearly nude dancing in places where liquor is licensed to be sold.

In the course of its opinion, the Court stated:

"Whatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment. Although some may quarrel with the wisdom of such legislation and may consider topless dancing a harmless diversion, the Twenty-first Amendment makes that a policy judgment for the state legislature, not the courts."

*Id.* at 718, 101 S.Ct. at 2602.

The Court subsequently applied the holding in *Bellanca* to the City of Newport, to uphold a prohibition of nude or nearly nude dancing in establishments serving liquor. *City of Newport v. Iacobucci*, 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986). However, the definition of nudity in that Newport ordinance was less restrictive than the statute in *Bellanca* or the ordinances in the instant case.

The difference lies in that the *Iacobucci* ordinance merely prohibited exposing "to view portion [sic] of the [female] breast referred to as the areola, nipple, or simulation thereof," 479 U.S. at 93 n. 1, 107 S.Ct. at 384 n. 1, and it thus permitted the wearing of "pasties," revealing the lower portion of the breast.

In *Barnes v. Glen Theatre, Inc.*, —— U.S. ——, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), the Supreme Court addressed the regulation of nude or nearly nude dancing in establishments not serving liquor. These enterprises apparently hoped to avoid the impact of *Bellanca/Iacobucci* by refraining from serving liquor. Because the broad powers afforded states under the Twenty-first Amendment were not involved, the enterprises argued that their freedom of expression in nude dancing could not be regulated.

The Court in *Barnes* recognized that "nude dancing ... is expressive conduct within the outer perimeters of the First Amendment, though ... only marginally so." *Barnes v. Glen Theatre*, —— U.S. at ——, 111 S.Ct. at 2460. The plurality opinion then held that this activity, as expressive conduct, was subject to reasonable time, place and

manner restrictions, even in establishments not serving liquor. The essence of the majority opinion stated:

> "This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

*Id.* —— U.S. at ——, 111 S.Ct. at 2461 (quoting *United States v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968) (footnotes omitted)).

The Court went on to hold that the Indiana public indecency statute survived analysis under this quadri-partite test, even in establishments that did not serve liquor. *Id.* —— U.S. at ——, 111 S.Ct. at 2463.

Tracking the *Barnes* analysis, this court finds that the Newport Ordinances are justified even as applied to establishments not serving liquor[1] despite their incidental limitations on some expressive activity. The application of the quadri-partite test to the Newport nudity ordinance closely parallels its application in *Barnes*, taking into account, however, the further requirement of bikini tops, rather than pasties.

Applying the first two factors, the court holds that the Bikini Ordinance is clearly within the constitutional police power of the City and furthers the substantial governmen-

tal interest in regulating evils such as prostitution and "bust-out" activities, which tend to parasitically attach themselves to adult entertainment. *See Barnes,* —— U.S. at —— ——, 111 S.Ct. at 2469–70 (Souter, J., concurring). Thus, the ordinance furthers "a substantial government interest in protecting order and morality." *Id.* —— U.S. at ——, 111 S.Ct. at 2462 (plurality opinion).

Applying the third factor, the court holds that "[t]his interest is unrelated to the suppression of free expression." *Id.* The analysis of the *Barnes* Court is conclusive:

> "But we do not think that when Indiana applies its statute to the nude dancing in these nightclubs it is proscribing nudity because of the erotic message conveyed by the dancers. Presumably numerous other erotic performances are presented at these establishments and similar clubs without any interference from the state, so long as the performers wear a scant amount of clothing. Likewise, the requirement that the dancers don pasties and a G-string does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic. The perceived evil that Indiana seeks to address is not erotic dancing, but public nudity. The appearance of people of all shapes, sizes and ages in the nude at a beach, for example, would convey little if any erotic message, yet the state still seeks to prevent it. Public nudity is the evil the state seeks to prevent, whether or not it is combined with expressive activity."

*Id.* —— U.S. at ——, 111 S.Ct. at 2463.

The first three prongs of the *Barnes/O'Brien* test having been satisfied easily, we move to the fourth factor, which "requires that the incidental restriction on First Amendment freedom be no greater than is essential to the furtherance of the governmental interest." *Id.* —— U.S. at ——, 111 S.Ct. at 2463.

 As noted above, the statute in *Barnes* only required that erotic dancers

---

1. It seems to the court that under *Bellanca/Iacobucci* there can be no doubt the Ordinance is valid as applied to establishments serving liquor.

wear "pasties," along with a G-string. The issue here thus boils down to whether the more stringent requirement of a bikini top is "greater than is essential to the furtherance of the governmental interest" in controlling the evils concomitant to adult entertainment. *Id.*[2]

Our research has produced no authority directly on point on this narrow aspect of the case. Nor has any been cited by the parties.

Having considered the matter carefully, the court concludes that some leeway must be afforded the reform efforts of the City Council of Newport. This body has been elected by the citizens to attempt to "clean up the image" of the City.

To do this, it must overcome the sleazy impression of Newport and Northern Kentucky that survives from "the heyday" when things ran wide open; reform candidates were literally drugged and framed for morals offenses by public officials and police officers; the members of reform citizens groups were vilified and harassed; and a "liberal" in local parlance was a person favoring the continued open and notorious violation of the gambling and morals laws.

To illustrate that the Council's perception of a need to clean up the image of the City is not paranoid, the court notes the following statements in a national magazine's satirical article on Newport's big sister, the City of Cincinnati.

> "The city's streets fairly shine; the odd litterer draws a scornful stare. Wide avenues, bosky side streets, the most inviting of thoroughfares. And clean. So clean. No X-rated movie theaters, no adult-book stores, no bare-breasted night joints soil these streets, all of them long ago jettisoned over to the Kentucky side of the river."

Peter Richmond, *Town Without Pity*, Gentlemen's Quarterly, July 1993, at 102, 104.

This court holds that the City of Newport has the right to secede as Cincinnati's combat zone.

The court holds that the City has "an important and substantial governmental interest" in advancing these reform goals, which interest is furthered by the ordinances in question. *Barnes,* —— U.S. at ——, 111 S.Ct. at 2461. The court further finds and holds that in the case of the City of Newport, given its unique history, the ordinances' "incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* (quoting *O'Brien,* 391 U.S. at 376–77, 88 S.Ct. at 1678–79).

Newport's image affects that of all of Northern Kentucky, a community of nearly 300,000 people. That City and its community have the right to project a progressive and decent image. The nudity ordinances contribute to the enhancement of this interest and will be upheld.

Therefore, the court finds that Newport's Bikini and Public Nudity Ordinances are constitutional.

(B) The Adult Entertainment Ordinance

Newport's Adult Entertainment Ordinance (Ordinance No. 0–91–14) sets forth several conditions to obtaining an exotic dancing license, for the purpose of "reduc[ing] the adverse impact that such adult entertainment has had in the City of Newport...." Section 31–1. Of relevance here, plaintiffs contest the ordinance's $5,000.00 licensing fee, its restriction of business hours to 6:00 p.m. through 2:30 a.m., and certain financial disclosure requirements. Plaintiffs further al-

---

**2.** The court is unmoved by plaintiffs' contention that the Bikini Ordinance actually "criminalize[s] conduct that ... occurs in a YMCA, the fitting room of a fitness center, or in a doctor's office." Pl.Br., pp. 4–5. Although the Ordinance's Sec. 4–81 purports to apply to nude activity on "business establishments['] premises," we are convinced that the provision is directed solely at adult entertainment establishments. Because the court is, in any event, required to interpret the Ordinance narrowly, to avoid constitutional and overbreadth problems, *see R.A.V. v. City of St. Paul,* —— U.S. ——, ——, 112 S.Ct. 2538, 2558, 120 L.Ed.2d 305 (1992); *New York v. Ferber,* 458 U.S. 747, 769 n. 24, 102 S.Ct. 3348, 3361 n. 24, 73 L.Ed.2d 1113 (1982), we must conclude that it does not extend to non-entertainment related establishments such as doctors' examination rooms, fitting rooms, and locker rooms. Further, the court holds that such locations are not "public places" because non-physician males would not be admitted to such areas.

lege that certain provisions of the ordinance are impermissibly vague and/or overbroad.

We address the contested provisions in the order in which the provisions themselves appear in the ordinance.

*Licensing Fees*

■ Plaintiffs first argue that section 31–5 of the Adult Entertainment Ordinance, imposing a $5,000.00 licensing fee on all adult entertainment establishments, constitutes an impermissible "tax on expression."

■ Because the power to tax is "as potent as the power of censorship," states generally may not impose a charge upon the exercise of a First Amendment right. *Murdock v. Pennsylvania*, 319 U.S. 105, 113, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943). Thus, any taxes or licensing fees that single out expressive activity must be necessary "to achieve an overriding governmental interest." *Minneapolis Star v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 582, 103 S.Ct. 1365, 1370, 75 L.Ed.2d 295 (1983). Moreover, such fees must go to defraying the costs incurred in policing such activities, or their undesirable secondary effects. *See Ellwest Stereo Theater, Inc. v. Boner*, 718 F.Supp. 1553, 1574 (M.D.Tenn.1989). The burden of presenting convincing evidence to justify the fees lies with the municipality. *See id.*

Here, the asserted governmental interest pursued by the fee scheme is combatting prostitution and other illegal conduct, which the record indicates has often emanated from Newport's adult entertainment bars and their direct surroundings. The City has submitted extensive surveys and figures which justify the special adult bar licensing fee. The record further indicates that these activities have generated high costs to the City, for policing and surveillance. *See* Def. Exs. G, H.

For instance, in 1990, adult entertainment establishments caused the City to incur $71,147.00 in policing and surveillance costs, but only paid $16,400.00 in alcohol licensing fees. (Def. Ex. G.)[3] The record indicates that the increased surveillance measures were taken in good faith. Between the years 1978 through 1986, there were 81 criminal convictions for criminal acts committed on the premises of adult entertainment establishments. This figure represents 65 prostitution-related convictions, and also includes several convictions for possession of controlled substances, trafficking in controlled substances, assault, disorderly conduct, and unlawful nude activity. *See* Whitehead Mem. to Mayor and Bd. of Comm., dated Sept. 24, 1986 (Def. Ex. K).

In the Central Business District itself, which encompasses the adult establishments, there were 36 sex-related arrests (mainly charging prostitution or criminal solicitation) made in 1986, at least 23 of which resulted in conviction. *See* Whitehead Mem. to Mayor and Bd. of Comm., dated Oct. 23, 1986 (Def. Ex. K). Moreover, the conviction records from 1983 through 1986 indicate a gradual increase in such behavior. *Id.* By contrast, in those same years, there occurred only eight (8) prostitution-related convictions at Newport businesses not offering adult entertainment. *See id.* Plaintiffs do not contest the accuracy of any of these figures.[4]

Indeed, such figures raise little controversy. That adult entertainment bars often generate harmful "secondary effects" on neighborhoods has long been recognized. *See, e.g., City of Renton v. Playtime Theatres*, 475 U.S. 41, 52, 106 S.Ct. 925, 931, 89

---

3. Plaintiffs contend that these 1990 figures are unpersuasive and irrelevant, because recent "[p]olice arrests are down." Pl.Br., p. 12. The dispositive issue is not the number of arrests, but rather the costs of the additional policing and surveillance. Indeed, if police arrests have, in fact, decreased, it is actually evidence that the enactment of the Ordinance has begun to achieve its very purpose—to decrease crime.

4. Plaintiffs do argue that the figures are unpersuasive, because "[t]he largest number of police

calls are to establishments that are not adult entertainment in nature." Pl.Br., p. 12. While this broad observation may be true, it does not refute the fact that most *prostitution* arrests occur in or around the adult entertainment establishments. A legislature may permissibly impose heavier licensing fees on erotic bars, *so long as* those fees go toward combatting an undesirable effect—such as prostitution—which is endemic to such bars.

L.Ed.2d 29 (1986) (upholding strict zoning ordinance aimed at adult theatres, where city had proven such harmful "secondary effects"); *see also Barnes v. Glen Theatre, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2456, 2469, 115 L.Ed.2d 504 (1991) (Souter, J., concurring); *Friedman v. Valentine,* 177 Misc. 437, 30 N.Y.S.2d 891, 894 (Sup.Ct.1941) ("That an unsupervised cabaret offers a tempting field for abuses and crimes is almost axiomatic."), *aff'd,* 266 A.D. 561, 42 N.Y.S.2d 593 (1943).

Thus, because Newport's licensing fees combat undesirable effects such as prostitution, the fees address an "overriding government interest," as required by *Minnesota Star. Cf. Acorn Investments, Inc. v. City of Seattle,* 887 F.2d 219, 222 (9th Cir.1989) (noting in dicta that if city proved that peep parlors fostered criminal activity, it would have substantial interest in charging special fees). Moreover, the undisputed figures indicate that the $5,000.00 fee was devised nearly precisely to meet the expenses of the City's additional policing measures. *Compare Broadway Books, Inc. v. Roberts,* 642 F.Supp. 486, 493 (E.D.Tenn.1986) ($500.00 licensing fee upheld, where it was "as minimal as necessary" to meet the costs of maintaining sanitary conditions of adult establishments) *with Ellwest Stereo,* 718 F.Supp. at 1574–75 (invalidating $500.00 licensing fees, where fees exceeded costs of their stated purpose). Therefore, the court holds that this provision is constitutionally valid.

*Financial Disclosure Requirements*

■ Plaintiffs additionally object to the ordinance's financial disclosure provision, which requires applicants for adult entertainment licenses to "file a financial disclosure form with the City License Inspector ... [to] be supplied by the City License Inspector." Adult Entertainment Ordinance § 31–6(5). Plaintiffs did not raise this argument at the oral hearing, or ever specify what constitutionally objectionable information might be required by this provision. Rather, plaintiffs have generally asserted that "financial disclosure ... singl[es] out this particular constitutionally protected expression [of nude dancing] for overzealous information ... [but] ... is only necessary to ascertain whether or not

a reasonable licensure fee can be met." Pl. Br., p. 12.

Beyond this, there is no hint in the record as to what the required disclosure form even entails. Without more, such as some specific allegation that the disclosure provisions make burdensome or improper inquiries, the provision must be upheld. *See Lee v. Newport,* No. 91–00613, 947 F.2d 945 (Table) (6th Cir. Nov. 5, 1991) (available on WESTLAW, 1991 WL 227750, p. *7) (disclosure requirement constitutional if it generally evaluates "an applicant's fitness for the occupation") (quoting *Chalfy v. Turoff,* 804 F.2d 20, 23 (2d Cir.1986)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1559, 118 L.Ed.2d 207 (1992); *Ellwest Stereo,* 718 F.Supp. at 1567 (ordinance is "not unconstitutional simply because it imposes disclosure requirements on adult-oriented establishments which are not imposed on other businesses"); *see also T–Marc, Inc. v. Pinellas Cty.,* 804 F.Supp. 1500, 1505 (M.D.Fla. 1992) (upholding special disclosure requirements for adult use establishments).

*Imposition of Strict Liability Upon Licensees*

■ Plaintiffs next contest the validity of Section 31–10(a)(1) of the Adult Entertainment Ordinance, which imposes penalties upon licensees for acts occurring on their premises. That section provides, in pertinent part:

"(a) Any license issued under this section may, with notice to the holder thereof and a hearing as hereinafter provided for, be revoked or suspended by the Board of Commissioners:

"(1) If, within twelve (12) months prior to the date on which charges are filed, there has been a conviction of any licensee *or his agent, servants or employees for any action or activity occurring in, on or at the premises* covered by the license in violation of any provision of this division or any other ordinance of the City of Newport, or of any criminal or penal statute of the Commonwealth of Kentucky against gambling, disorderly conduct or any other criminal or penal offense, and a judgment of conviction in any court of competent jurisdiction shall be conclusive evidence of such violation[.]"

Adult Entertainment Ordinance § 31-10(a)(1) (emphasis added).

Plaintiffs argue that this section impermissibly punishes licensees for the illicit actions carried out by employees or independent contractors, on their premises.[5] The imposition of this type of strict liability upon owners and operators for the acts of their employees and independent contractors, raises serious constitutional questions. As the Sixth Circuit has held, in a closely analogous, but unpublished opinion:

"Without both a sufficient showing by the City [of Newport] that the plaintiff's fitness to operate the Brass Bull was affected by the conviction of any of her employees for acts of prostitution or other relevant criminal conduct committed on the premises, such as that she knew or should have known about or condoned such conduct, and without allowing the plaintiff the opportunity to present evidence in defense, fairly considered by the decision maker, the City may not revoke or suspend the plaintiff's occupational license in violation of the right to due process...."

*Lee v. Newport*, No. 91–00613, 947 F.2d 945 (Table) (6th Cir. Nov. 5, 1991) (available on Westlaw, 1991 WL 227750, p. *7).

At oral argument, defendant City conditionally conceded—as it must—that this provision, standing as is, offends due process.[6] Therefore, the court now finds such provision to be unconstitutional.

*Vagueness/Overbreadth Arguments*

*(i) Prohibition of Conduct "Obnoxious to the Morals"*

Plaintiffs next argue that two provisions of the Adult Entertainment Ordinance are unconstitutionally vague and/or overbroad.

The first assertedly defective provision, contained at section 31–10(a)(2), reads:

"(a) Any license issued under this section may, with notice to the holder thereof and a hearing as hereinafter provided for, be revoked or suspended by the Board of Commissioners:

. . . .

"(2) If there shall occur in, on or at the premises covered by the license any condition which is a nuisance or obnoxious to the morals and general welfare of the public[.]"

Adult Entertainment Ordinance § 31–10(a)(2).

It is a general principle of due process that "an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Thus, a statute must delineate any prohibited conduct "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

This principle stands whether or not the enactment in question is directed at a fundamental right, such as freedom of expression. *See Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). However, it is particularly applicable where the challenged enactment acts to inhibit such freedoms. *See Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974); *Doe v. University of Michigan*, 721 F.Supp. 852, 867 (E.D.Mich.1989). Finally, a

---

5. In their complaint, plaintiffs raised similar, but broader, arguments challenging Newport's Occupational Renewal Ordinance (No. 0–90–57), a more general provision governing occupational license renewal. After oral argument and further briefing, it has become apparent that the constitutional defects complained of, regarding license renewal, are actually presented within Section 31–10 of the Adult Entertainment Ordinance. Accordingly, all counts of the complaint regarding Ordinance No. 0–90–57 merge into the counts of the complaint regarding Ordinance No. 0–91–14.

6. At oral hearing, defendant's counsel opined that there had been an amendment to this section of the Adult Entertainment Ordinance, requiring that the licensee have knowledge of the violation. Defendant has since indicated that no such amendment exists. Def. Supp. Mem. p. 2. It has, instead, submitted for comparison an amendment to the Occupational Renewal Ordinance, which does require such knowledge, but does not purport to amend or override section 31–10 of the Adult Entertainment Ordinance.

challenged enactment need not deprive a citizen of his physical liberty to offend due process; it is enough that it seeks to deprive him of a property interest, such as a license. *See Hoffman Estates,* 455 U.S. at 498–99, 102 S.Ct. at 1193; *see also Baer v. City of Wauwatosa,* 716 F.2d 1117, 1124–25 (7th Cir. 1983).

█ The Adult Entertainment Ordinance provides for license revocation upon the occurrence of "any condition which is a nuisance or obnoxious to the morals and general welfare of the public." There is little doubt that this provision is void for vagueness, and thus offensive to the guarantees of the First and Fourteenth Amendments. It provides no particular guidance as to what types of conditions are deemed "obnoxious" to the community's morals or welfare. Even in the small city of Newport, ordinary persons do not agree as to what offends community morals or welfare. For as the Supreme Court stated in *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971):

> "Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, 'men of common intelligence must necessarily guess at its meaning.' *Conally v. General Construction Co.,* 269 U.S. 385, 391 [46 S.Ct. 126, 127, 70 L.Ed. 322]."

*Id.* at 614, 91 S.Ct. at 1688 (invalidating as unconstitutionally vague an ordinance prohibiting assembly of persons "who conduct themselves in a manner annoying to persons passing by"). *See also Doe v. University of Michigan,* 721 F.Supp. at 867 (invalidating University policy prohibiting, *inter alia,* "any behavior ... that stigmatizes or victimizes" others).

The court notes that the Supreme Court of the United States and the Supreme Court of Kentucky cannot agree whether homosexual acts may be prohibited as "obnoxious to morals." *Compare Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), *with Commonwealth v. Wasson,* 842 S.W.2d 487 (Ky.1993).

For these reasons, the court finds section 31–10(a)(2) void for vagueness, and thus constitutionally invalid.

Having so decided, it is unnecessary to further decide whether this provision merits application of the overbreadth doctrine, sister to the vagueness doctrine.

### (ii) Regulation of "Simulated" Conduct

█ Plaintiffs additionally contend that the term "simulated," as used in the Adult Entertainment Ordinance, is unconstitutionally vague and/or overbroad. Pl.Br., p. 6. Plaintiffs apparently contest a provision of the ordinance, section 31–4(1)(i)(1), which includes in the definition of "adult dancing" any dancing which exposes "simulated male genitals in a discernable turgid state...." Contrary to plaintiffs' assertions, this section in no way enforces a ban on "simulated" conduct or depictions, but simply regulates it, as it does semi-nude activity, as "adult" entertainment.

This provision is not vague, as reasonable persons and performers need not guess when a dance involves "simulated male genitals." Courts analyzing similar provisions have consistently held likewise. *See, e.g., New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (statute prohibiting "simulated" acts upheld); *United States v. X–Citement Video, Inc.,* 982 F.2d 1285, 1288–89 (9th Cir.1992) (definition including "simulated" sexual acts neither vague nor overbroad); *MD II Entertainment, Inc. v. City of Dallas,* No. 3–92–CV–1090H, 1993 WL 227774 *5–6 (N.D.Tex.1993) (city's regulation of "simulated nudity" neither vague nor overbroad); *see also Iacobucci v. City of Newport, Ky.,* 785 F.2d 1354, 1371 (6th Cir.1986) ("Men of common intelligence do not have to guess" at meaning of "simulation") (Potter, J., concurring and dissenting in part), *rev'd on other grounds,* 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986).

Plaintiff's overbreadth argument on this ground is equally unpersuasive, because it cannot be said that the provision contains any potentially improper restrictions. Rather, there can be little quarrel that *any* dance steps employing phalluses—genuine or sim-

ulated—fall within the legitimate sweep of the "adult dancing" regulations.[7]

*Hour Restrictions*

■ Plaintiffs further argue that the restriction on hours to 6 p.m. through 2:30 a.m., contained at section 31–12(j) of the Adult Entertainment Ordinance, is not reasonably related to a governmental purpose, citing the longer hours permitted other bars and restaurants. This argument must be rejected. The restriction of hours serves the legitimate purpose of confining to evening hours the illicit and immoral practices that accompany them and concentrate around them. Moreover, the hour restrictions may discourage minors from gaining entry to these establishments, and will prevent their "expos[ure] to undesirable elements." Both of these concerns were explicitly mentioned in the "Findings of Fact" accompanying the ordinance. *See* Adult Entertainment Ordinance § 31–2(c)–(e); *see also Mitchell v. Comm'rs of Comm'n on Adult Entertainment Establishments*, 802 F.Supp. 1112, 1118 (D.Del.1992); *Broadway Books, Inc. v. Roberts*, 642 F.Supp. 486, 493 (E.D.Tenn.1986) (upholding ordinances restricting adult book store hours). Therefore, the imposition of such hour restrictions is constitutionally permissible.

*Severability Clause*

■ As set forth above, the Court has found certain provisions contained in the Adult Entertainment Ordinance unconstitutional, pursuant to the protections of the First and Fourteenth Amendments. Having done so, it does not follow that the entire ordinance, apart from those provisions, need be struck down. Section II of the Ordinance provides:

"If any clause, sentence, paragraph, section, or subsection of the within ordinance is determined to be unconstitutional, illegal, or otherwise void, or held in [sic] invalid by any court of competent jurisdiction, the remaining lawful and valid clauses, sentences, paragraphs, sections, and subsections of the within ordinance shall

be considered severed from said invalid or void provisions and the lawful and valid provisions shall remain in full force and effect."

The Supreme Court has held that such a severability clause renders a statute presumptively divisible. *Williams v. Standard Oil Co. of Louisiana,* 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287 (1929). Thus, "[i]t is the duty of the courts to give effect to a severability clause and to make an elision, so as not to invalidate an entire act." *Brown v. Alexander,* 718 F.2d 1417, 1428 (6th Cir.1983) (citing *Moore v. Fowinkle,* 512 F.2d 629 (6th Cir.1975)); *see also Ellwest Stereo Theater, Inc. v. Boner,* 718 F.Supp. 1553, 1581 (M.D.Tenn.1989) (recognizing same).

Accordingly, only those provisions deemed unconstitutional will be enjoined from enforcement, with the remainder of the statute standing as valid.

**(C) Application to Allegedly Private Clubs**

■ Newport's Ordinance No. 0–91–40, generically referred to as the "Nude in Public Ordinance," provides, in pertinent part:

"Section 17.44

"A. It shall be unlawful for a person to appear in any public place in such a manner or attire as to expose to view any portion of the pubic area, anus, vulva or genitals, or any simulation thereof, or for any female to appear in such manner or attire as to expose to view the portion of the breast below a horizontal line across the top of the areola at its highest point or simulation thereof.

. . . .

"C. "Public place" as used here shall be defined the same as "Public Place" in KRS 525.010."

K.R.S. 525.010(3), in turn, defines a "public place" as:

"[A] place to which the public or a substantial group of persons has access and includes but is not limited to highways, apartment houses and hotels not constitut-

---

**7.** Plaintiffs have not explicitly contested the similar regulations on "simulated" nudity, located within The Bikini Ordinance, *supra.* However, if such was nonetheless their intention, the foregoing analysis applies with equal weight.

ing rooms or apartments designed for actual residence. An act is deemed to occur in a public place if it produces its offensive or proscribed consequences in a public place."

One plaintiff, Mousetrap Burlesque and Artistic Dance Preservation Society, claims to operate as a "private" club, with a private membership, and not-for-profit status. Plaintiffs claim that the application of the ordinance to such "private" activity would impermissibly infringe upon the right to privacy afforded by the federal and state constitutions. According to plaintiffs, the prohibition of such protected conduct alongside unprotected conduct thus renders the Nude in Public Ordinance impermissibly overbroad.

For its part, the City's counsel has confirmed at oral hearing that the Preservation Society—like the other plaintiffs—might indeed be prosecuted under the statute, if it is determined to be a place to which "the public has access."

Plaintiffs have indicated that the Preservation Society's status as a "private" club is a matter presently being argued in the Kentucky Supreme Court, in *Hendricks v. Commonwealth*, No. 92–SC–000662. This court has not had the advantage of full briefing on the issue of what constitutional protections (under either federal or state protections), if any, afford a right to such "private" nudity. For both of these reasons, the court hereby dismisses the count in the complaint regarding the status of the club as not ripe for decision, inasmuch as the status of said club will be determined by the state court.

Therefore, the court being advised,

IT IS ORDERED as follows:

1. That Newport Ordinance 0–91–21 (Bikini Ordinance) is hereby adjudged constitutional, on its face and as applied to all plaintiffs herein. Accordingly, the court grants defendants' motion for summary judgment on this ground (Doc. # 31), denies plaintiffs' motion for summary judgment on this ground (Doc. # 29) as to all plaintiffs, and dismisses all counts in plaintiffs' complaint regarding such ordinance;

2. That Newport Ordinance No. 0–91–14 (Adult Entertainment Ordinance) Section 31-

5, is hereby adjudged constitutional, on its face and as applied to all plaintiffs herein. Accordingly, the court grants defendants' motion for summary judgment on this ground (Doc. # 31), denies plaintiffs' motion for summary judgment on this ground (Doc. # 29) as to all plaintiffs, and dismisses all counts in plaintiffs' complaint regarding such ordinance;

3. That Newport Ordinance No. 0–91–14 (Adult Entertainment Ordinance) Section 31–6(5), is hereby adjudged constitutional, on its face and as applied to all plaintiffs herein. Accordingly, the court grants defendants' motion for summary judgment on this ground (Doc. # 31), denies plaintiffs' motion for summary judgment on this ground (Doc. # 29) as to all plaintiffs, and dismisses all counts in plaintiffs' complaint regarding such ordinance;

4. That Newport Ordinance No. 0–91–14 (Adult Entertainment Ordinance) Section 31–10(a)(1), is hereby adjudged unconstitutional, on its face and as applied to all plaintiffs herein. Accordingly, this court grants plaintiffs' motion for summary judgment on this ground (Doc. # 29) as to all plaintiffs, and denies defendants' motion for summary judgment on this ground (Doc. # 31). Pursuant to Count Eleven of the complaint herein, the court orders that defendants be enjoined from enforcing said section, and this Order is "binding upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise" Fed.R.Civ.P. 65(d);

5. That Newport Ordinance No. 0–91–14 (Adult Entertainment Ordinance) Section 31–10(a)(2), is hereby adjudged unconstitutional, on its face and as applied to all plaintiffs herein. Accordingly, this court grants plaintiffs' motion for summary judgment on this ground (Doc. # 29) as to all plaintiffs, and denies defendants' motion for summary judgment on this ground (Doc. # 31). Pursuant to Count Eleven of the complaint herein, the court orders that defendants be enjoined from enforcing said section, and this Order is "binding upon the parties to the action, their

officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise" Fed.R.Civ.P. 65(d);

6. That Newport Ordinance No. 0–91–14 (Adult Entertainment Ordinance) Section 31–4(1)(i)(1), is hereby adjudged constitutional, on its face and as applied to all plaintiffs herein. Accordingly, the court grants defendants' motion for summary judgment on this ground (Doc. # 31), denies plaintiffs' motion for summary judgment on this ground (Doc. # 29) as to all plaintiffs, and dismisses all counts in plaintiffs' complaint regarding such ordinance;

7. That Newport Ordinance No. 0–91–14 (Adult Entertainment Ordinance) Section 31–12, is hereby adjudged constitutional, on its face and as applied to all plaintiffs herein. Accordingly, the court grants defendants' motion for summary judgment on this ground (Doc. # 31), denies plaintiffs' motion for summary judgment on this ground (Doc. # 29) as to all plaintiffs, and dismisses all counts in plaintiffs' complaint regarding such ordinance;

8. That all counts of the complaint, regarding the status of plaintiff Mousetrap Burlesque and Artistic Dance Preservation Society, Inc. as a private club, and its corresponding rights under Newport's Ordinance No. 0–91–40 (Nude in Public Ordinance), be, and they are, hereby dismissed as not yet ripe for decision, inasmuch as the status of said club will be determined by the state court;

9. That all counts of the complaint contesting the provisions of Newport Ordinance 0–91–25 (the Clear View Ordinance) are hereby dismissed as abandoned, as concerns all plaintiffs;

10. That all counts of the complaint contesting the provisions of Newport Ordinance 0–91–17 (the B–Girl Ordinance) are hereby dismissed as abandoned, as concerns all plaintiffs; and

11. That all counts of the complaint contesting the provisions of Newport Ordinance 0–90–57 are hereby dismissed, as to all plaintiffs, having merged into those regarding 0–91–14 (Adult Entertainment Ordinance) Section 31–10(a)(1).

This Order is not a final order, because there are damages claimed with regard to the Ordinances that have been declared unconstitutional.