In the Matter of the Application of Samuel Friedman, as President of the New York Local Joint Board of the Hotel and Restaurant Employees International Alliance and Bartenders International League of America, and Others, Petitioners, for an Order against Lewis J. Valentine, Police Commissioner of the City of New York, Respondent.

Supreme Court, New York County. November 10, 1941.

*Boudin, Cohn & Glickstein* [*Louis B. Boudin* of counsel], for the petitioners.

*Victor S. Gettner,* for the New York City Civil Liberties Committee, *amicus curiæ.*

*William C. Chanler, Corporation Counsel* [*Charles C. Weinstein* and *Bernard Friedlander* of counsel], for the respondent.

PECORA, J. The petitioners (respectively the president of the joint council of labor unions whose members are engaged in cabarets in the city of New York, and a cook and a waiter in cabarets) bring this proceeding to restrain the police commissioner of the city of New York from enforcing rules promulgated by him for the regulation of cabarets. After the argument of the motion, and as a result of suggestions made upon such hearing, the regulations were amended. The motion will be considered as addressed to the regulations as amended.

Regulation 3 of the Regulations Governing Cabarets provides that every person in the employ of a cabaret who comes in contact with the patrons thereof shall be fingerprinted. An entertainer who is in the employ of a cabaret for more than thirty days must be fingerprinted. No person who has been convicted of a felony or of certain misdemeanors and offenses specified in subdivision 2 of section 102 of the Alcoholic Beverage Control Law may be employed in a cabaret, except in the discretion of the police commissioner.

Regulation 4 provides that the owner of a concession in a cabaret and all of his employees shall be fingerprinted, and that, except in the discretion of the police commissioner, no person may be permitted to own or operate a concession or be employed therein who has been convicted of certain crimes and offenses specified in regulation 3.

Regulation 5 provides that the police commissioner shall issue identification cards which must be procured by all cabaret employees who come in contact with the public, and by all concessionaires and their employees. This card must be in constant physical possession of the person to whom it is issued while he is on the premises of the cabaret where he is employed. Such identification card may be revoked or suspended by the police commissioner after notice and hearing.

Under regulation 6 the owner or manager of a cabaret is forbidden to employ any person who has not obtained an identification card, and who under the rules requires one.

Supervision and licensing of cabarets were placed in charge of the police department in 1931. Such supervision became necessary as a result of certain evils which flourished in and followed the prohibition era. That an unsupervised cabaret offers a tempting field for abuses and crimes is almost axiomatic. The affidavits show that the regulations under consideration were promulgated to combat certain abuses which were not covered by existing rules. These include the ownership or control of cabarets by criminals and racketeers in the names of " dummies " or " fronts;" the

employment of criminals and other undesirables in cabarets who come in contact with patrons under conditions conducive to criminality; and the growing use of such cabarets as bases of operation by criminals who were acting in collusion with employees and concessionaires therein.

Applicants for cabaret licenses have been fingerprinted since 1931. But simply fingerprinting such applicants did not give the police an adequate means to prevent crimes by and with employees, steerers and operators of so-called " clip joints," nor to apprehend the perpetrators. Under the amended regulations the police will have a means of establishing the identities of all persons connected with the cabaret business. This will result not only in purging the business of unfit elements, but will also aid effectively in the solution of crimes or offenses peculiarly connected with the operation of cabarets.

Petitioners primarily attack the power of the police commissioner to issue the regulations. Under section 435 of the New York City Charter the police department is given the power to inspect and observe all places of public amusement. This includes cabarets. Section 436 grants to the police commissioner the power to issue, revoke and suspend licenses for public dance halls, cabarets, etc., and to make rules and regulations for the supervision and operation of such cabarets. These grants of power must be construed as an aid to the police department in performing its duty to prevent and suppress crime and to exercise surveillance over places of public amusement. Section 436-1.0 of the Administrative Code of the City of New York provides for the regulation of dance halls and cabarets and the licensing thereof. This section does not exclude the right to promulgate rules to regulate cabarets. In fact, the section recognizes by its terms the power of the police commissioner to exercise supervision over cabarets through the issuance of regulations. Section 436-1.0 does not constitute a complete regulatory provision governing the conduct of the cabaret business. It is merely a framework, leaving to the discretion of the police commissioner the devising of necessary details related to supervision. (See, also, N. Y. City Charter, § 885; *Matter of Apel* v. *Moss*, 256 App. Div. 607.) The power of the Legislature to confer authority upon an official to promulgate regulations to effectuate a policy expressed in a statute is too well settled to merit further discussion. (*Darweger* v. *Staats*, 267 N. Y. 290; *Cherubino* v. *Meenan*, 253 id. 462.)

In *Pacific States Co.* v. *White* (296 U. S. 176) the Supreme Court said: " But where the regulation is within the scope of authority

legally delegated, the presumption of the existence of facts justifying its specific exercise attaches alike to statutes, to municipal ordinances, and to orders of administrative bodies." Petitioners have failed to show that the regulations under attack are not justified by conditions existing in the cabaret industry. The regulations are neither arbitrary nor capricious. In fact, common knowledge and the proof adduced by respondents indicate positive and convincing reasons for such regulations.

The argument that the regulations violate the " due process " clause of the Constitution in interfering with the right to pursue employment without interference by the police commissioner is not tenable. The right to pursue any calling may be conditioned. Any occupation may be reasonably regulated if others may be exposed to danger or misfortune by such calling. ( *Nebbia* v. *New York*, 291 U. S. 502; *People* v. *Beakes Dairy Co.*, 222 N. Y. 416.)

The test of constitutionality is whether an evil exists and whether there is a logical relation between the eradication of the evil and the enactment of regulations intended to cure the condition. (*Matter of Stubbe* v. *Adamson*, 220 N. Y. 459.)

No one can sincerely argue against the conclusion that persons employed in cabarets and by their concessionaires have especially favorable opportunities to victimize patrons of such establishments. The regulations impose a penalty solely upon a licensee. The cabaret licensee must see to it that he has in his employ persons who are less likely to victimize patrons than are those with criminal records. Fingerprinting as a means of regulation is not a new device, and has often been upheld by the courts. (*Matter of Itzkowitz & Sons, Inc.*, v. *Geraghty*, 139 Misc. 163, fingerprinting of second-hand dealers; *Kelly-Sullivan, Inc.*, v. *Moss*, 174 Misc. 1098; affd., 260 App. Div. 921, fingerprinting of ticket broker employees. See, also, *Medias* v. *City of Indianapolis*, 216 Ind. 155; 23 N. E. [2d] 590; *City of Wichita* v. *Wolkow*, 110 Kan. 127; 202 P. 632; *United States* v. *Kelly*, 55 Fed. [2d] 67.)

Fingerprinting of licensees has been a standard practice in New York city for years. The department of licenses will issue licenses only after the applicant has been fingerprinted in the following occupations or businesses, among others: auctioneer, billiard and pool table parlor, employment agency, express wagon, sightseer guide, junkdealer, keymaker, locksmith, laundry, massage operator, public porter, second-hand dealer and ticket broker.

In my opinion the regulations extending the requirements of fingerprinting to employees of licensees of cabarets is a lawful and proper exercise of power. It is certainly as justifiable as the

fingerprinting of the applicants for licenses, which has been sustained many times.

Authorizing the police commissioner to bar persons convicted of felonies and other offenses from employment in cabarets is consistent with the public policy enunciated in subdivision 2 of section 102 of the Alcoholic Beverage Control Law, which prohibits a licensee from employing a person convicted of a felony and certain enumerated misdemeanors. Cabaret proprietors hold licenses under the Alcoholic Beverage Control Law. The regulation of the police commissioner will facilitate the enforcement of this legislative policy.

Neither does the regulation automatically disqualify for employment one with a criminal record. The police commissioner may in his discretion permit persons with criminal records to be employed where he believes this may be done without endangering public safety. Moreover, an identification card may be revoked only after notice and hearing. If the power is exercised arbitrarily the victim has his redress in the courts.

There remains the question of whether the regulations violate section 201-a of the Labor Law. That section provides: " Except as otherwise provided by law, no person, as a condition of securing employment or of continuing employment, shall be required to be fingerprinted." The purpose of that enactment clearly was to prevent private employers from using fingerprinting as a means for blacklisting union leaders and members. There was no intention to interfere with the power of the government to provide for fingerprinting. The widespread practice on the part of State and local administrative officials of promulgating regulations requiring fingerprinting was surely known to the Legislature when it enacted section 201-a in 1937. In fact, the introductory phrase of that section, " Except as otherwise provided by law," was inserted to exclude requirements of fingerprinting imposed by governmental authority. The exception would include not only State statutes but also local laws, municipal ordinances, and regulations and rules promulgated within the authority granted to officials. (See *Inman* v. *Sandvig*, 170 Wash. 112; 15 P. [2d] 696; *Baldwin Township's Annexation*, 305 Penn. St. 490; 158 A. 272.)

The court, therefore, holds that the regulations in question are " provisions of law " within the meaning of section 201-a of the Labor Law, and, consequently, do not come within the prohibitions of that statute.

The motion to declare the amended regulations null and void is, therefore, denied, and the petition is dismissed. Settle order.