**UTILITY WORKERS UNION OF AMERICA, AFL–CIO, by its President, James JOY, Jr., Plaintiff,**

v.

**NUCLEAR REGULATORY COMMISSION, Defendant.**

87 Civ. 3214 (GLG).

United States District Court,
S.D. New York.

July 10, 1987.

Donald F. Menagh, P.C. (David Stolow, of counsel), New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Frederick M. Lawrence, Asst. U.S. Atty., New York City, for defendant.

## OPINION

GOETTEL, District Judge:

The plaintiff, Utility Workers Union of America, AFL–CIO, ("UWUA"), seeks a declaratory judgment that section 606 of the Omnibus Diplomatic Security and Anti-Terrorism Act of 1986 is unconstitutional on its face and as applied to those members of the UWUA working at nuclear power facilities to the extent that it requires submission to fingerprint checks. The UWUA moves preliminarily to enjoin the defendant, the United States Nuclear Regulatory Commission ("NRC"), from enforcing its regulation implementing the Act against the UWUA members. Pursuant to Fed.R. Civ.P. 12(b)(6), the NRC moves to dismiss the plaintiff's constitutional challenge while opposing the motion to enjoin the

NRC regulation. For the reasons stated below, the defendant's motion to dismiss is granted and the plaintiff's motion for injunctive relief is denied.

*Background*

The statute at issue here is section 606 of the Omnibus Diplomatic Security and Anti-Terrorism Act of 1986, codified as section 149 of the Atomic Energy Act of 1954, 42 U.S.C.A. § 2169 (1986). The statute directs the NRC to require nuclear reactor licensees[1] to fingerprint each individual who is permitted unescorted access to nuclear power facilities or access to "safeguards information,"[2] and to submit these fingerprints to the NRC for identification and a criminal history records check. The statute permits exemptions consistent with security and public safety.

The NRC regulation at issue, 10 C.F.R. § 73.57, implements the statute. It obliges workers, including the 5170 members[3] of the plaintiff UWUA, to comply with the fingerprinting and checking process in order to retain, or obtain, unescorted access privileges to a nuclear facility. Failure to comply will result in the denial of access privileges. In most cases, the loss of access privileges will mean loss of employment. At this time, the licensees have begun fingerprinting the UWUA members but have not completed the entire process.

*Discussion*

### 1. *Jurisdiction Over the Challenge to the Regulation*

Initially we must determine whether this Court has jurisdiction to review the regulation at issue. Under the Atomic Energy Act, at 42 U.S.C. § 2239, any "final order," entered in a proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees, is sub-

---

**1.** "Licensees" are the utilities who have been licensed by the NRC to generate electrical power from nuclear sources.

**2.** "Safeguards information" refers to detailed information concerning a licensee's security measures for the physical protection of special nuclear material or vital safety equipment at a nuclear power facility. *See* 10 C.F.R. 73.2(jj) (1987).

**3.** The UWUA has approximately 58,000 members employed by private and public utility companies throughout the United States. According to the plaintiff's data, 5,170 of these members are either employed full time at nuclear facilities or are subject to assignment there. However, the plaintiff claims that 5,470 members are subject to the regulation's requirements.

ject to judicial review in the manner prescribed in the Hobbs Act, 28 U.S.C. § 2342(4) (1982). This Act gives exclusive jurisdiction over all such final orders to the Courts of Appeals. Therefore, if the regulation is a final order, we do not have jurisdiction to review it.

■ The plaintiffs argue that the challenged regulation is not a "final order" because it is not the result of an adjudication. This argument is inapposite. Whether an order is the result of agency adjudication or agency rulemaking is of no consequence for purposes of determining whether or by what court judicial review is appropriate.

To determine whether an order is final, and thereby whether the Court of Appeals has exclusive jurisdiction over its review, the appropriate inquiry is whether the process of administrative decision-making has reached a stage where judicial review will not be disruptive of the agency process and whether legal consequences will flow from the action taken. *Natural Resources Defense Council v. NRC,* 539 F.2d 824, 836–37 (2d Cir.1976), *vacated as moot,* 434 U.S. 1030, 98 S.Ct. 759, 54 L.Ed.2d 777 (1978).

■ As in *Natural Resources,* the regulation at issue has been promulgated after notice and comment, so that administrative decision-making is complete and judicial review will not disrupt the agency process. And, legal consequences will indeed flow from the regulation, since individuals who refuse to be fingerprinted will be denied the access privileges they need for their jobs. For these reasons, the regulation is a "final order" within the meaning of the Atomic Energy Act. Because it is a final order, and because it deals with the activities of licensees, the regulation is subject to review in the manner prescribed in the Hobbs Act. Therefore, jurisdiction properly lies with the Court of Appeals and not with this Court.

■ Moreover, even were this action properly brought in this Court, we would lack jurisdiction under the Hobbs Act because the plaintiff failed to bring this action within the prescribed period. The Hobbs Act, at 28 U.S.C. § 2344, permits an aggrieved party to petition for review within sixty days of the date of promulgation of a regulation. The plaintiff filed this action on May 8, 1987, sixty-seven days after the regulation was issued on March 2, 1987. Therefore, the plaintiff's motions to enjoin the enforcement of the regulation and to stay its effective date are dismissed for want of jurisdiction.

## 2. *Constitutional Challenge to the Statute*

Next we address the plaintiff's claim that section 606 of the statute violates the UWUA members' Fourth Amendment and privacy rights. This Court has jurisdiction over the constitutional challenges to this statute under 28 U.S.C. § 1331 (1982).

■ The plaintiff argues that the fingerprinting requirement of the statute constitutes an unreasonable search and seizure of its members. There is no merit to this argument because the intrusion is both minimal and reasonable. The plaintiff's reliance upon the Supreme Court's conviction reversals in *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) and *Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), is inapposite because the Court based its decisions in those cases on the improper detentions of the defendants rather than on their fingerprinting. Indeed, these cases offer some support for a conclusion opposite to that suggested by the plaintiff; in dicta, they suggest that if fingerprinting procedures are sufficiently circumscribed, then such procedures might satisfy the requirements of the Fourth Amendment. *Davis,* 394 U.S. at 727–28, 89 S.Ct. at 1397–98, *Hayes,* 105 S.Ct. at 1647. Unlike the defendants in *Davis* and *Hayes* who were taken to the police station for fingerprinting, these plaintiffs will be fingerprinted at their job sites. Furthermore, the procedure will be done on all employees who apply for access privileges. No stigma is attached to the process.

Moreover, in non-criminal contexts, courts have regularly upheld fingerprinting

of employees. *See, e.g., Thom v. New York Stock Exchange,* 306 F.Supp. 1002 (S.D.N.Y.1969), *aff'd sub nom. Miller v. New York Stock Exchange,* 425 F.2d 1074 (2d Cir.), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970);[4] *Walton v. City of Atlanta,* 181 F.2d 693 (5th Cir), *cert. denied,* 340 U.S. 823, 71 S.Ct. 56, 95 L.Ed. 604 (1950) (fingerprinting of taxi drivers); *Friedman v. Valentine,* 177 Misc. 437, 30 N.Y.S.2d 891 (Sup.Ct.1941), *aff'd,* 266 A.D. 561, 42 N.Y.S.2d 593 (1943) (fingerprinting of cabaret employees). The court in *Thom* upheld a New York statute requiring all employees of member firms of national security exchanges and affiliated clearing corporations to be fingerprinted as a condition of employment. It noted that fingerprinting under the statute was only a means of verifying the existence or nonexistence of a prior criminal record. It cited the Supreme Court in *Davis* as observing, "[f]ingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search." *Thom, supra,* 306 F.Supp. at 1009, quoting *Davis, supra,* 394 U.S. at 727, 89 S.Ct. at 1397. In the instant case, as in *Thom,* fingerprints are to be used only for identification and the verification of any previous criminal record.

The plaintiff also argues that the statute violates its members' constitutional right of privacy. The Sixth Circuit addressed this issue in a similar case, *Iacobucci v. City of Newport,* 785 F.2d 1354 (1986), and held that an ordinance requiring certain employees of bars to be fingerprinted did not violate the constitutional right of privacy. That court's reasoning applies equally to this case.

> Whatever the outer limits of the right to privacy, clearly it cannot be extended to apply to a procedure the Supreme Court regards as only minimally intrusive. Enhanced protection has been held to apply only to such fundamental decisions as contraception ... and family living ar-

rangements. Fingerprints ... have not been held to merit the same level of constitutional concern.

*Id.* at 1357–58 (citations omitted).

■ Since fingerprints do not merit enhanced protection, Congress may require certain individuals to be fingerprinted if it can show that fingerprinting bears a rational relationship to a legitimate government objective. Ensuring the security of nuclear reactors is clearly such a legitimate government objective. The legislative history of the statute indicates that Congress saw a real need to improve this security, especially in light of an incident of sabotage at the Surrey nuclear power plant in Virginia. Using fingerprints to verify the identity and any existing criminal history of workers with access to vital areas or safeguards information is a rational method of clearing these workers. Therefore, the statute at issue here does not violate the right to privacy of the plaintiff's members.

Section 606 does not violate any privacy right, and because the fingerprinting it mandates does not constitute an unreasonable search and seizure, the statute is constitutional on its face and as applied to the members of the UWUA.

The plaintiff also complains that when licensees obtain criminal history records, they may find old or incomplete information which would unfairly stigmatize certain employees and adversely affect their careers. *See* Affidavit of John Walsh at 8. This argument is not well taken for several reasons. To begin with, prospective employees of nuclear licensees are already required to provide their prospective employer with a two or three-year criminal history, which may be incomplete or otherwise deficient. And in any event, employers already have access to their employees' FBI criminal history records under the Freedom of Information Act, 5 U.S.C. § 552 (1982).[5] Thus, the plaintiffs are al-

---

**4.** The court in *Thom* provided an extensive listing of cases which upheld fingerprinting requirements, 306 F.Supp. at 1007 n. 17, as well as a "random selection" of federal and state stat-

utes which authorize or require fingerprinting, 306 F.Supp. at 1012–13.

**5.** However, this access is not a complete substitute for fingerprint checks since an employee's

ready subject to many of the risks of which they complain.

Indeed, the statute may reduce the risks posed by old or incomplete information, because it requires that implementing regulations provide a method for correcting, completing, or explaining alleged deficiencies in the collected information. *See* 52 Fed.Reg. ¶ 6,311 (1987). Moreover, the statute expressly limits a licensee's use of the collected information to a determination of whether to grant access privileges. If a licensee misuses this information in the future, the aggrieved party may seek relief at that time.

*Conclusion*

The regulation challenged by the plaintiff in this case is a "final order" within the meaning of the Hobbs Act. As such, jurisdiction over its review lies exclusively with the Courts of Appeals. The plaintiff's regulatory challenge therefore has been filed in the wrong court and, moreover, is untimely. For these two reasons, we dismiss the regulatory challenge for want of jurisdiction.

Because the required on-site fingerprinting and criminal history checks do not violate the UWUA members' Fourth Amendment rights nor any right to privacy, section 606 of the Omnibus Diplomatic Security and Anti-Terrorism Act of 1986 is constitutional on its face and as applied to the members of the UWUA.

For the reasons stated above, the plaintiff's motion for injunctive and declaratory relief is denied. The defendant's motion to dismiss is granted and the complaint is dismissed in its entirety. The clerk will enter judgment accordingly.

SO ORDERED.

criminal record may exist under a different name.