■ LEGAL AID SOCIETY et al., Appellants, v CITY OF NEW YORK et al., Respondents. [662 NYS2d 303] —Judgment, Supreme Court, New York County (David Saxe, J.), entered August 1, 1996, which dismissed the "Verified Petition and Complaint" in its entirety, unanimously modified, on the law, to reinstate the second cause of action (except that portion based on exclusion from the Request for Proposals ["RFP"] contracting process), and the third cause of action for relief under 42 USC § 1983, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered July 11, 1996, upon which judgment was entered, unanimously dismissed as subsumed in the appeal from the judgment, without costs.

This combined action/special proceeding was commenced in June 1996 by the Legal Aid Society ("Legal Aid" or "Society") and an individual taxpayer against the City of New York, its Mayor and his Criminal Justice Coordinator, and three entities that have become providers of legal services in criminal proceedings involving indigent clients in Brooklyn and Queens. The claims are based on allegedly illegal conduct by the Mayor and others in depriving Legal Aid of its hitherto exclusive role as provider of legal services for indigents throughout the five boroughs of the City. The petition/complaint alleges three causes of action:

(1) that the City Administration, by awarding legal services contracts in June 1996 to respondents/defendants Queens Law Associates, Brooklyn Defender Services and Appellate Advocates, made an unlawful end run around the "governing body" (here, the City Council), in violation of County Law § 722;

(2) that the City violated its Charter and the Rules of the Procurement Policy Board ("PPB") by making multiple contract awards through a process of Request for Proposals, and by excluding an objectively qualified potential proposer (Legal Aid) from the RFP process; and

(3) that the foregoing actions violated Legal Aid's right under the National Labor Relations Act to bargain freely with its own union, giving rise to an action under 42 USC § 1983.

The IAS Court elected to view Legal Aid's pleading entirely in the context of a CPLR article 78 proceeding, and dismissed all the claims asserted as barred by the 4-month Statute of Limitations (CPLR 217 [1]).* In denying the petition in its entirety, the IAS Court nonetheless failed to address specifically the third cause of action, and the possibility that that claim might be governed by a different Statute of Limitations. We find this to be error, and modify accordingly.

In support of the third cause of action, the pleading sets forth detailed allegations pertaining to the events following the expiration, on September 30, 1994, of the collective bargaining agreement between the Society and the Association of Legal Aid Attorneys, the union representing the non-supervisory Legal Aid lawyers. The pleading alleges that the Mayor, acting on behalf of the City, proposed to displace the Society and cancel the latter's City-wide contract as provider of legal ser-

---

* A Federal court recently dismissed Legal Aid's parallel action on res judicata and collateral estoppel grounds (*Legal Aid Socy. v City of New York*, 1997 WL 394609, 1997 US Dist LEXIS 10053 [SD NY, July 11, 1997, Stein, J. (96 Civ 5141 [SHS])]). Instead of reaching the merits in that action, Judge Stein simply deferred to the prior-invoked jurisdiction of the State tribunal.

vices to the indigent if it negotiated a wage increase with the union, even if the Society were able to fund the increase without any recourse to additional public money. The expressed view of the Mayor, communicated to the Society through his Criminal Justice Coordinator, was that any increase would impact unfavorably upon the City's upcoming labor negotiations with the major unions representing the City's own municipal employees.

Because of this risk of termination, the Society decided not to respond to the wage increase demand. As a result, the unionized lawyers walked off the job at 12:01 on Saturday morning, October 1, 1994. Legal Aid attorneys had struck seven times previously in the Society's 30-year contractual relationship with the City. But this time, calling it "an attempt to hold the City hostage to demands for unreasonable wage increases * * * in violation of [the Society's] ethical obligations" to provide legal representation to the indigent, the Mayor directed the termination of all Legal Aid contracts with the City. On October 4, the Mayor said he would consider entering into a new contract with the Society, if the Society agreed that any Legal Aid lawyer who did not return to work by October 5 would be excluded from any further representation paid for by the City. The strike ended four days later, and the union then signed a 4-year, no-strike contract.

In October 1995, the City solicited contract proposals from the three legal services respondents, *inter alia*. In Addendum No. 4 to the RFP, the City narrowed the field by explicitly providing that any "proposal submitted by the Legal Aid Society would be deemed not responsive." It is alleged that this program to replace the Society in Brooklyn and Queens was carried out in retaliation, to "punish" the Society for its strike and posture of supposed defiance with respect to the City's fiscal austerity measures.

Notwithstanding the Mayor's criticism of the job action, the lawyer employees of the Society, which is not a public institution, had the legal right to strike (*see, Golden State Tr. Corp. v Los Angeles*, 493 US 103) under the previous contract. The Supreme Court has held that allegations of this kind state a viable claim for relief under 42 USC § 1983, which interdicts any "person"—here a municipality (*see, Monell v Department of Social Servs.*, 436 US 658)—from acting under color of law to deprive another of rights secured by the Constitution or other Federal law. In this case the protective law is the National Labor Relations Act, which preempts, where applicable, all State or local governmental interference with labor-

management bargaining. "[A] city cannot condition a franchise renewal in a way that intrudes into the collective-bargaining process" (*Golden State Tr. Corp. v Los Angeles*, 475 US 608, 619).

The City invokes on this appeal an exception to the preemption of the National Labor Relations Act where the governmental entity is acting as a proprietor rather than a regulator, in which case the governmental entity is entitled to act with the freedom of a private party in the marketplace (*Building & Constr. Trades Council v Associated Bldrs. & Contrs.*, 507 US 218). However, this fact-driven contention is a matter to be set up by answer to the pleading, and to await proofs that develop in the course of further litigation herein.

The most appropriate period of limitation for commencing an action under 42 USC § 1983 is the State statute governing personal injury actions (*Wilson v Garcia*, 471 US 261). In New York, the 3-year Statute of Limitations (CPLR 214 [5]) is applicable to such claims (*423 S. Salina St. v City of Syracuse*, 68 NY2d 474, *appeal dismissed and cert denied* 481 US 1008; *see, Owens v Okure*, 488 US 235). Accordingly, the third cause of action is not time-barred.

As to the first cause of action, attacking the City's effort to bar the Society from the contract solicitation process altogether, petitioners' grievance dated not from the award of the new contracts in June 1996, but from the issuance of that unambiguous exclusionary language in the RFP addendum eight months earlier (*Matter of GFI-Genfare v New York City Tr. Auth.*, 184 AD2d 334, *lv denied* 80 NY2d 759). Petitioners argue that the City should be estopped from objecting to a tolling of the Statute of Limitations, by reason of the Corporation Counsel's warning in January 1996 that any legal action taken prior to the signing of new contracts would be considered premature. But the doctrine of estoppel is unavailable against a public agency (*Public Improvements v Board of Educ.*, 56 NY2d 850), notwithstanding the inconsistent statement of a governmental officer (*Grishman v City of New York*, 183 AD2d 464, 466, *lv denied* 80 NY2d 760); moreover, having dealt with the City over a course of 30 years, petitioners are expected to "know the law" (*Matter of New York State Med. Transporters Assn. v Perales*, 77 NY2d 126, 131). The first cause of action is thus time-barred.

Likewise, so much of the second cause of action as sought relief based on exclusion from the bidding process was barred by the Statute of Limitations. But a portion of that claim was based upon the Mayor's alleged refusal to follow the restriction

in the PPB Rules against awarding multiple contracts for indigent services except where "necessary for adequate * * * service" (9 RCNY 5-05 [b] [1]). Clearly, that grievance would not arise until the actual award of the new contracts in June 1996, and this proceeding was thus timely in that respect. Concur—Rosenberger, J. P., Wallach, Nardelli and Rubin, JJ.