J. Douglas McManus, Jr., Esq. Informal Opinion County Attorney No. 2002-12 County of Schenectady County Office Building 620 State Street Schenectady, New York 12305-2114
Dear Mr. McManus:
You have requested an opinion on three related but distinct questions regarding the permissibility of requiring criminal background checks on individuals seeking to provide care for elderly or infirm persons within the County of Schenectady. First, you ask whether the county may perform criminal history background checks on prospective employees of the Glendale Home, a county-owned nursing home. Second, you ask whether the county may require individuals seeking to provide personal care services under contract with the County Department of Health to submit to criminal history checks. Third, you ask whether the county may require privately-owned nursing homes located in the county to perform criminal history checks on their prospective employees. Each of these questions requires its own analysis and is dealt with separately. For ease of explication, the third question will be addressed here first.
Background
The Division of Criminal Justice Services ("Division") is the repository of criminal history records, which are essential to a criminal background check. See Executive Law § 837(6), (7). The Division is empowered to search its records and report the results in connection with employment applications in those circumstances authorized by law. See Executive Law § 837(8-a). In order for an agency or organization to receive such reports, it must enter into a written agreement with the Division that sets forth certain terms and conditions deemed necessary and appropriate by the Division. See 9 N.Y.C.R.R. § 6051.1. The Division has advised us that, in order to assure the accuracy of the report, it requires that the fingerprints of any individual who is the subject of a request for a criminal background check be provided. Thus, it will be possible to perform a check only if the county is permitted to require the fingerprinting of the relevant employees.
Also relevant to your inquiry is Labor Law § 201-a, which pertains to the fingerprinting of employees. It provides that:
 Except as otherwise provided by law, no person, as a condition of securing employment or of continuing employment shall be required to be fingerprinted. This provision shall not apply to employees of the state or any municipal subdivisions or departments thereof, or to the employees of legally incorporated hospitals, supported in whole or in part by public funds or private endowment, or to the employees of medical colleges affiliated with such hospitals or to employees of private proprietary hospitals.
Thus, the statute generally prohibits fingerprinting as a condition of securing or continuing employment. However, the statute expressly excepts state and municipal employees from the protection of this prohibition. It also excepts employees of "private proprietary hospitals." Because nursing homes are expressly included within the definition of "hospitals" in Public Health Law § 2801(1), this exception is reasonably construed as including employees of private proprietary nursing homes. Further, the statute provides a general exception from the prohibition on fingerprinting as a condition of employment in those circumstances "otherwise provided by law." Labor Law § 201-a. These other provisions of law referred to in § 201-a include state statutes, local laws, municipal ordinances and properly promulgated rules and regulations that permit or mandate employee fingerprinting. See Friedman v. Valentine, 177 Misc. 437, 442 (Sup.Ct., N.Y. Co. 1941), aff'd, 266 A.D. 561 (1st Dep't 1943); 1964 Op. Atty. Gen. (Inf.) 113.
1. Private Nursing Homes
You have asked whether the county may require privately-owned nursing homes located in the county to conduct criminal background checks on prospective employees. Presumably, the means of achieving this goal would be through the enactment of legislation mandating that private nursing homes fingerprint their employees and conduct a background check.
In general, municipalities have broad police powers to enact local legislation concerning the health, safety, and well-being of their residents. N.Y. Const., art. IX, § 2; Municipal Home Rule Law §10(1)(ii)(a)(12). Municipalities may not, however, adopt local laws pursuant to their police power that are preempted by state legislation.See Dougal v. County of Suffolk, 102 A.D.2d 531 (2d Dep't 1984), aff'd onopinion below, 65 N.Y.2d 668 (1985); Consolidated Edison Company of NewYork, Inc. v. Town of Red Hook, 60 N.Y.2d 99 (1983); People v. DeJesus,54 N.Y.2d 465 (1981); Robin v. Incorporated Village of Hempstead,30 N.Y.2d 347 (1972).
Here, the State has reserved to itself the regulation of the nursing home industry, expressly preempting local legislation in this arena. The Legislature has declared in the Public Health Law that:
 In order to provide for the protection and promotion of the health of the inhabitants of the state . . ., the department of health shall have the central, comprehensive responsibility for the development and administration of the state's policy with respect to hospital and related services, and all public and private institutions, whether state, county, municipal . . . serving principally as facilities for the prevention, diagnosis or treatment of human disease . . . or physical condition . . . shall be subject to the provisions of this article.
Public Health Law, article 28, § 2800. Toward this end, P.H.L. § 2812 specifically prohibits counties, towns, villages and cities from enacting and enforcing any "regulations and standards for hospitals." As noted above, the definition of "hospitals" in the Public Health Law expressly includes nursing homes. P.H.L. § 2801(1). Because we conclude, as explained below, that P.H.L. § 2812 preempts the county's police power authority to enact local legislation, we determine that the county may not enact legislation requiring privately-owned nursing homes to conduct criminal background checks.
The preemptive scope of P.H.L. § 2812 is intentionally broad, as the provision's legislative history indicates. Prior to the enactment of section 2812 in its present form in 1973, article 28 of the Public Health Law contained no express preemption provision. Perhaps implicitly recognizing that article 28 occupied the field even in the absence of express preemption,[1] the unamended version had provided only that New York City was not precluded from enacting and enforcing more restrictive regulations and standards. Prior to 1973, New York City had exercised this power through its Health Services Administration ("H.S.A."), which was authorized by statute and local law to "promulgate its own requirements governing the premises, equipment, personnel and standards of medical care and services" of proprietary nursing homes and hospitals in New York City. See Memorandum of Sen. Conklin, New York State Legislative Annual 1973, pp. 177-179. By 1973, however, the Legislature concluded that its intent to confer comprehensive authority on the Department of Health for the regulation of hospitals was being frustrated by the H.S.A.'s practice of subjecting proprietary hospitals and nursing homes to requirements that were inconsistent with or duplicated those imposed by the Department of Health. Expressly prohibiting local authorities, most specifically the H.S.A., from adopting their own regulations was necessary to alleviate the "hardship imposed upon proprietary hospitals or nursing homes, in having to comply with two completely inconsistent sets of requirements . . . ." Id. at p. 178.
In light of the statute's broad scope, a local law requiring private nursing homes to fingerprint and/or conduct criminal background checks of prospective employees would be, by its nature, a "regulation" or "standard" imposed upon the nursing home, and appears to be the type of requirement that the state statute was intended to preempt. Our conclusion is reinforced by the Department of Health's promulgation, pursuant to its authority to regulate nursing homes, of regulations addressing such matters as personnel requirements and qualifications.See, e.g, 10 N YC.R.R. § 415.26(a)(1) (requiring nursing home to employ duly licensed administrator); 10 N.Y.C.R.R. § 415.26(b)(2) and (3) (requiring home to employ such personnel as are necessary to provide required services to residents); 10 N.Y.C.R.R. § 415.26(c)(1)-(2) (governing staff qualifications and personnel management, orientation and training); 10 N.Y.C.R.R. § 415.26(d) (governing facility's nurse aide certification and training program). Because a criminal history background check, like the requirements in these regulations, concerns a qualification or condition of employment, a local law requiring such checks would seem to fall within the scope of local regulations or standards prohibited by § 2812.
Accordingly, given its broad language and legislative history, we conclude that P.H.L. § 2812 preempts the county's police power to enact and enforce a local law imposing such a requirement on private nursing homes.
Finally, we note that while the county may not require private nursing homes to fingerprint and perform criminal background checks, it appears that private nursing homes may do so if they choose. As noted above, Labor Law § 201-a does not prohibit fingerprinting as a condition of employment for employees of private proprietary hospitals. In addition, under the Arts and Cultural Affairs Law, private proprietary hospitals are affirmatively authorized to require employees to be fingerprinted as a condition of securing or continuing employment. See Arts Cult. Aff. Law § 61.11. Because nursing homes are included within the definition of "hospitals" set forth in the Public Health Law, it seems reasonable to read the references to hospitals in these statutes as applying to nursing homes as well. See P.H.L. § 2801(1); McKinney's Statutes § 236.
2. Employees of Schenectady County Nursing Home
We reach a different conclusion with respect to the county's authority to require fingerprinting and criminal background checks of prospective employees at its own nursing home. We conclude both that the county has sufficient affirmative authority to impose such requirements, and that this authority is not preempted by P.H.L. § 2812 or any other general state law of which we are aware.
We turn first to the question of whether the county has the affirmative authority to impose fingerprinting and background check requirements on its own prospective employees. State law authorizes counties to enact local laws relating to the terms and conditions of employment for municipal employees. Specifically, Article IX, § 2 of the State Constitution confers broad authority upon local governments to adopt local laws governing the terms and conditions of municipal employment. N.Y. Const. Art. IX, § 2(c)(ii)(1). Municipalities may adopt or amend local laws with respect to
 (1) The powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection, welfare and safety of its officers and employees . . . .
N.Y. Const. Art. IX, § 2(c)(ii)(1). The Municipal Home Rule Law includes a similar authorization. See Municipal Home Rule Law §10(1)(ii)(a)(1). In addition, Labor Law § 201-a authorizes a county to require fingerprinting of its own municipal employees as a condition of employment.
As noted in our response to your first question, a municipality's power to adopt local laws is limited to the extent the law is inconsistent with the Constitution or any general law, or to the extent the Legislature has restricted the adoption of such local law. See N.Y. Const. Art. IX, § 2(c)(ii); Municipal Home Rule Law § 10(1)(ii). The key issue in resolving your second inquiry is whether Public Health Law §2812 preempts a county from requiring fingerprinting and/or a criminal background check of its own nursing home employees, as we have concluded it does with respect to a similar requirement imposed by the county on private proprietary nursing homes.
Public Health Law § 2812 provides in pertinent part that no local government "shall enact and enforce regulations and standards for hospitals." What this statute clearly prohibits is the enactment of generally-applicable local regulations that govern hospital (and nursing home) care. At first glance, it would seem that as with employees of private proprietary nursing homes, P.H.L. § 2812 would also preempt the county's application of such a requirement to its own nursing home employees. Although the question is a close one, for the reasons explained below, we conclude that such an action does not implicate P.H.L. § 2812's restriction on a county's regulatory authority.
In defining the scope of similar preemptive language or congressional intent, the federal courts have held that state and local governments are preempted only when they act in their regulatory capacity, not when they are exercising a proprietary function. As the Supreme Court explained inBuilding and Constr. Trades Council of the Metropolitan Dist. v.Associated Builders and Contractors of Mass./Rhode Island, Inc.,507 U.S. 218 (1993), a case involving preemption under the National Labor Relations Act,
 [w]hen we say that the NLRA pre-empts state law, we mean that the NLRA prevents a State from regulating within a protected zone. . . . A State does not regulate, however, simply by acting within one of these protected areas. When a State owns and manages property, for example, it must interact with private participants in the marketplace. In so doing, the State is not subject to pre-emption by the NLRA, because pre-emption doctrines apply only to state regulation.
507 U.S. at 226-227 (emphasis in original).[2]
The regulatory/proprietary distinction has been recognized in other contexts by other courts. See, e.g., Stucky v. City of San Antonio,260 F.3d 424 (5th Cir. 2001) (using dichotomy in reviewing whether municipal ordinance awarding towing contract was preempted); Petrey v.City of Toledo, 246 F.3d 548 (6th Cir. 2001) (same). While we have not found any New York cases in which the regulatory/proprietary distinction provided the rule of decision on a preemption question, the distinction has been acknowledged and referred to several times. See Legal AidSociety v. City of New York, 242 A.D.2d 423 (1st Dep't 1997); MaloneParachute Club, Inc. v. Town of Malone, 197 A.D.2d 120 (3d Dep't 1994).
In our opinion, this principle distinguishes your first inquiry — whether the County may impose a requirement on all private proprietary nursing homes — from your second inquiry — whether the County may require fingerprinting and/or background checks of its own employees. The Court of Appeals has indicated that the provision of medical care is a proprietary function. See Schrempf v. State of NewYork, 66 N.Y.2d 289 (1985). When a county establishes the terms and conditions of employment for its own employees, and where those employees perform a proprietary function for the county, it seems to us that the county is best understood as acting in its proprietary capacity, rather than exercising its authority to regulate a field of activity. Just as a private proprietary nursing home could hold its employees to a higher standard than that demanded by the Department of Health (for example, by offering a higher patient/caregiver ratio than that required by law, or by fingerprinting its prospective employees), so too can the County, in its capacity as a private participant in the nursing home industry, require fingerprinting and/or a criminal history background check of its potential employees.[3] Finally, we note that this conclusion appears consistent with the county's general authority to enact provisions governing the operation of its public hospitals pursuant to General Municipal Law § 126-b(1).
The Division of Criminal Justice Services will perform a criminal history check in connection with an application for employment if such checks are authorized by law. See Executive Law § 837(8-a). In our opinion, the provisions referred to above provide sufficient authorization for the county to enact a local law requiring fingerprinting and criminal background checks of prospective employees for the Glendale Home. You should consult with the Division prior to enacting a local law to assure that such law meets the Division's requirements. It will also be necessary for Schenectady County to enter an agreement with the Division in order to obtain criminal background reports. See 9 N YC.R.R. § 6051.1. Again, we recommend that you contact the Division to determine what measures Schenectady County must take to enter such an agreement.
3. Individuals Providing Personal Care Services Under Contract With the Schenectady County Department of Health
You have also asked us whether the county may require individuals who provide personal care services under contract with the county Department of Health to undergo criminal background checks. "Personal care services" are services provided in a patient's home and include personal hygiene services, housekeeping, simple health care tasks and other related supportive services. See P.H.L. § 3602(4). Counties are responsible for providing personal care services to Medicaid recipients when such services are essential to the maintenance of the recipient's health and safety in his or her own home. See 18 NYCRR 505.14. In most cases, personal care services are provided through an entity that has contracted with the county. In some cases, however, the county may contract directly with an individual to provide the necessary services.
While Labor Law § 201-a exempts municipal employees from the prohibition against fingerprinting as a condition of employment, individuals who independently contract with the county or who are employed by a private entity under contract with the county are not municipal employees. See Public Officers Law § 18(1)(b). Labor Law § 201-a, however, also permits the fingerprinting of prospective independent contractors or the employees of personal care service agencies selected to contract with the county if "otherwise provided by law." Labor Law § 201-a. This phrase has been construed to include local laws. See Friedman, 177 Misc. at 442.
We believe the county's powers under the Constitution provide sufficient authority for a local law requiring fingerprinting and criminal background checks of such individuals to the extent such checks are necessary to protect the public health, safety, and welfare. The Constitution authorizes counties to adopt local laws relating to the protection of "order, conduct, safety, health, and well-being of persons or property." N.Y. Const. Art. XI, § 2(c)(ii)(10). Additionally, the Municipal Home Rule Law expressly authorizes counties to adopt laws relating to the transaction of its business and the public welfare. See
Mun. Home Rule Law § 10(1)(ii)(a)(3), (12).
As with its employment power, the municipality may not enact laws relating to the safety, health and well-being of persons or property that are inconsistent with the Constitution or any general law, or to the extent the Legislature has restricted the adoption of such local law.See N.Y. Const. Art. IX, § 2(c)(ii); Mun. Home Rule Law §10(1)(ii). In comparison to laws applicable to private proprietary nursing homes, Public Health Law § 2812 does not impair the municipality's authority with respect to personal care services employees. Because those who provide personal care services are not nursing home employees and do not provide these services within a nursing home, section 2812 by its own terms does not apply.
The county's authority with respect to provision of personal care services, however, has been restricted by other state laws. Personal care services are provided by the county in its role as the local agent of the State under the Medicaid program. See Social Services Law §§ 20(3),61, 65, 367-k, 367-l, 367-n, and 367-p. Thus, the county may enact only rules that are not inconsistent with the regulations promulgated by the former Department of Social Services, now the Department of Health, as the single state agency charged with administering the Medicaid program.See generally Matter of Greer v. Monroe County Dept. of Social Services,67 Misc.2d 480, 481 (Sup.Ct. 1971); Social Services Law §§ 20(3), 61,65. The Department of Health also maintains authority to approve or disapprove rules submitted by local social services departments, such as Schenectady County, with respect to local administration of public assistance programs. See Social Services Law § 20(3)(a).
With this in mind, we note that counties such as Schenectady County that engage outside entities or individuals to provide personal care services must use the model contract for personal care services promulgated by the State Department of Health. See 18 N.Y.C.R.R. § 505.14(c)(2). The county may attach local conditions to the contract if these provisions do not change the model contract's basic requirements. See
18 N.Y.C.R.R. § 505.14(c)(3)(i). However, proposed variations to the model contract must be submitted to the Department of Health for approval prior to implementation. See 18 N.Y.C.R.R. § 505.14(c)(3)(ii). While a contractual term that requires personal care providers to submit to fingerprinting and criminal background checks does not appear to alter the model contract requirements, Schenectady County may place such a condition in its provider contracts only after the county obtains the approval of the Department of Health.
Thus, while a local law requiring fingerprinting and background checks for personal care service providers is generally within the county's home rule authority, that authority may only be exercised with the approval of D.O.H.
The Division of Criminal Justice Services will perform criminal history checks of these individuals if authorized by local law. See Executive Law § 837(8-a). As with fingerprinting its own employees, we believe the above-cited provisions of the Constitution and the Municipal Home Rule Law provide sufficient authority for counties to enact local laws requiring the fingerprinting and criminal history checks of individuals seeking to provide personal care services by contract with the county. To obtain the checks, it will also be necessary for the county to enter an agreement with the Division. See 9 N.Y.C.R.R. § 6051.1. The county should consult with the Division prior to enacting a local law to assure that it meets the Division's requirements and to facilitate the required agreement.
Conclusion
We conclude that the County of Schenectady may require prospective employees of the Glendale Home to provide fingerprints as a condition of employment and may, pursuant to local law and agreement with the Division of Criminal Justice Services, obtain criminal history records based upon the employees' fingerprints. The county may also, by local law, require the fingerprinting of those seeking to provide personal care services in the county, and may, by local law and agreement with the Division of Criminal Justice Services, obtain the criminal history records of those individuals. The county may not, however, require proprietary nursing homes located within the county to conduct criminal background checks on prospective employees.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE, Assistant Solicitor General
In Charge of Opinions
By: __________________________
KATHLEEN M. TREASURE
Assistant Solicitor General
[1] Even in the absence of express preemption, the Court of Appeals recognized that the Legislature had occupied the field so as to preempt a local regulation requiring abortions to be performed only in hospitals.See Robin v. Village of Hempstead, 30 N.Y.2d 347 (1972).
[2] The U.S. Supreme Court has also adopted the regulatory/ proprietary distinction in its dormant commerce clause cases, holding that "for purposes of analysis under the dormant Commerce Clause, a State acting in its proprietary capacity as a purchaser or seller may `favor its own citizens over others.'" Camps Newfound/Owatonna, Inc. v. Town ofHarrison, 520 U.S. 564, 592 (1997), quoting Hughes v. Alexandria ScrapCorp., 426 U.S. 794, 810 (1976).
[3] The County's proposed fingerprinting and background check requirement does not conflict with a substantive rule imposed by the Department of Health. The County could not, however, impose substantive requirements that directly conflict with those imposed by the Department of Health on all nursing homes. See P.H.L. § 2800; Matter of HarlemHospital Medical Bd. v. Hoffman, 84 A.D.2d 272, 279 (1st Dep't 1982). In this regard, the county is treated no differently than the operators of private nursing homes.